**Robert B. REICH, U.S. Secretary of Labor, Appellant,**

v.

**HOY SHOE COMPANY, INC., Appellee.**

No. 92–3430.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1993.

Decided Aug. 12, 1994.

Counsel who presented argument on behalf of the appellant Ronald Gottlieb, Washington, DC, argued (Judith E. Kramer, Joseph M. Woodward, Ann Rosenthal and Ronald J. Gottlieb, on the brief), for appellant.

Counsel who presented argument on behalf of the appellee was Gerald M. Richardson, St. Louis, MO, argued, for appellee.

Before WOLLMAN and LOKEN, Circuit Judges and HUNTER,[*] Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

This case was filed by the Secretary of Labor complaining that Hoy Shoe Company, Inc. (Hoy Shoe), discharged Anita Godsey in retaliation for activities protected under the Occupational Safety and Health Act, 29 U.S.C.A. § 651 *et seq* (OSH Act). The district court granted Hoy Shoe's summary judgment motion on the basis that the Secretary failed to set forth facts demonstrating that Hoy Shoe had actual knowledge that Anita Godsey engaged in statutorily protected activity. As such, the district court concluded that the Secretary failed to make the requisite prima facie showing. On appeal, the Secretary urges that: (1) the district court erred in requiring the Secretary to show that Hoy Shoe had actual knowledge that Anita Godsey had engaged in protected activity; (2) the district court improperly weighed the evidence and resolved a genuinely disputed factual issue regarding Hoy Shoe's motivation for discharging Anita Godsey; and (3) the district court erred in failing to consider Hoy Shoe's refusal to reinstate Anita Godsey as violative of the anti-discrimination provision of the OSH Act. We **REVERSE.**

## BACKGROUND

Hoy Shoe is a family-owned business that manufactures and distributes sandals. At all times relevant to this action, William Gebel was the President of Hoy Shoe. He directed the company's manufacturing activities. His son, Robert Gebel, was in charge of plant operations, including personnel matters.

Anita Godsey was hired by Hoy Shoe on January 4, 1990, and worked there for almost one year, until November 8, 1990. Ms. Godsey, along with two other employees, operated the 1700 machine. The 1700 machine molds polyurethane into shoes.

According to Anita Godsey, a few months after she began working at Hoy Shoe, she voiced certain health concerns to her co-operators related to the chemical spray used in the operation of the 1700 machine. She also asked Robert Gebel whether the chemical spray in question was safe and whether employees should be wearing masks and/or gloves.

On October 8, 1990, Ms. Godsey made an informal complaint to the local office of the Occupational Safety and Health Administration (OSHA). On October 20, 1990, Ms. Godsey filed a formal complaint with OSHA alleging hazardous conditions related to the use of the chemical spray at the 1700 machine. On November 5, 1990, OSHA compliance officer, Thomas Briggs, conducted an on-site investigation of the Hoy Shoe plant. Three days later, on November 9, 1990, Godsey reported to work late. At that time she was informed by Robert Gebel that she was being laid off for excessive tardiness. According to Godsey, Robert Gebel also told her that "if you don't think my father [Wil-

---

[*] The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

liam Gebel] knows what is going on in this factory, you're crazy."

As noted above, Thomas Briggs conducted an on-site inspection of Hoy Shoe. During the inspection, he informed the President, William Gebel, that the inspection was pursuant to an employee complaint. Briggs' report and notes related to the inspection indicate that William Gebel inquired regarding the identity of the complaining employee and appeared quite upset that Briggs could not reveal the employee's identity so he could "take care of the problem." Briggs' notes further reflect his impression that William Gebel, "would harass the complainant if he knew who it was." Finally, according to Briggs, W. Gebel indicated that he thought the employee who filed the OSHA complaint was a woman who had raised similar complaints to the company in the past.

Subsequent to her discharge, Godsey complained to OSHA that her discharge violated the anti-discrimination provision of the OSH Act.[1] The Secretary advised Hoy Shoe of the retaliation complaint and conducted an investigation. After completing the investigation, the Secretary filed this lawsuit in the district court alleging that Hoy Shoe's discharge of and refusal to reinstate Godsey violated § 11(c) of the OSH Act.

On August 15, 1990, Hoy Shoe instituted an employee conduct policy, which, among other things, addressed employee attendance. The policy warned that excessive tardiness could provide a basis for suspension or termination. Hoy Shoe contends that it discharged Ms. Godsey for excessive tardiness, in violation of company policy.

The Secretary's investigation established that, prior to Godsey's discharge, no employee had been disciplined under the August 15th attendance policy. Godsey was the first person so disciplined, even though other employees had comparable or worse attendance

records. The investigation further established that employees who continued to violate the policy, after Godsey's discharge, and whose instances of tardiness exceeded Godsey's, were not disciplined. The only other employee ever disciplined under the policy had a record significantly worse than Godsey's and was not disciplined until a point in time after Hoy Shoe had received notice of Godsey's retaliation complaint.

Pursuant to Hoy Shoe's motion, the district court granted summary judgment in favor of Hoy Shoe and dismissed the Secretary's complaint. The district court concluded that the Secretary was required to demonstrate that Hoy Shoe had actual knowledge of the identity of the complaining employee and that the evidence did not permit an inference that Hoy Shoe knew Ms. Godsey had filed the OSHA complaint giving rise to the inspection.[2]

We disagree with the conclusion of the district court's analysis and its application of this Court's prior decisions. Accordingly, we now **REVERSE.**

## I.

■■■ Summary judgment is proper if, upon viewing the facts in the light most favorable to the non-moving party, and giving her or him the benefit of all reasonable inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir.1991) (citations omitted). This Court, and the Supreme Court, have previously observed that it may be difficult to prove an employment discrimination case by direct evidence. *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 493 (8th Cir. 1990) (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716,

---

**1.** Section 11(c) of the OSH Act contains a broad antidiscrimination provision that prohibits employers from retaliating against employees who file complaints. 29 U.S.C. § 660(c). An employee who believes she has been discriminated against by her employer for filing a complaint may so complain to the Secretary under § 11(c). *Id.* The Secretary then investigates the complaint, and, upon a determination that the employer has violated the antidiscrimination provi-

sion, the Secretary is authorized to bring suit in federal district court. *Id.*

**2.** The district court focused exclusively on the discharge issue and did not examine the Secretary's contention that Hoy Shoe's refusal to reinstate Ms. Godsey also violated the antidiscrimination provision of the OSH Act.

103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). As such, certain circumstantial evidence may be adequate to support an inference of discrimination sufficient to meet plaintiff's prima facie burden. *See id.* at 493–94. Similarly, once an employer proffers a non-discriminatory reason for the employment action taken, the plaintiff need not always provide direct evidence of the employer's discriminatory intent. *Id.* at 494 (citations omitted).[3] The logic of this approach applies with equal force in cases where the alleged discrimination manifests itself in the form of a retaliatory discharge. With this said, however, it should not be taken that this Court is announcing a special rule for summary judgment in discrimination cases. It is not our view that the mere establishment of a prima facie case on the part of the plaintiff entitles her or him to survive a motion for summary judgment. *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1111 (1st Cir.1989). In all cases, whether direct or circumstantial, plaintiff's evidence must be sufficient to raise a genuine issue of material fact regarding defendant's reason for the employment action taken.

## II.

■ In considering retaliation cases, this Court has adopted a three-pronged framework for analysis. First, the plaintiff must make a prima facie case by "showing participation in a protected activity, a subse-quent adverse action by the employer, and some evidence of a causal connection between the protected activity ... and the subsequent adverse action." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993) (citations omitted).[4] Second, once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate an appropriate non-discriminatory reason for its action. *Schweiss*, 987 F.2d at 549 (citations omitted). Finally, if the employer satisfies this burden, the plaintiff must then demonstrate that the proffered reason is pretextual. *Id.* (citations omitted).[5]

■ Here, the district court determined, as a matter of law, that the Secretary failed, in the first prong, to establish a causal link between Godsey's protected activity and the adverse employment action, thereby failing to make his prima facie case. In doing so, the district court opined that plaintiff has the burden of showing that the employer *knew* that the employee in question engaged in protected activity.[6] Apparently, the district court would require in every case alleging retaliatory discharge that the plaintiff prove *actual knowledge* on the part of the defendant of the identity of the particular employee engaging in protected activity. We do not read this Court's prior decisions as compelling such a rule.

3. *See* discussion in section II, *infra*, including n. 4 and n. 5.

4. Circumstantial evidence is sufficient to establish a causal connection between the protected activity and the adverse employment action. *Schweiss v. Chrysler v. Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993); *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1089 (8th Cir.1992). For example, a showing that the adverse employment action so closely followed the protected activity in time could justify an inference of retaliatory motive. *Rath*, 978 F.2d at 1090.

5. To persuade the court that the employer's proffered reason is pretextual, plaintiff need not always supply additional evidence. *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 494–95 (8th Cir.1990) (citations omitted). It may be the case that plaintiff's prima facie proof is adequate to sustain its position. *Id.; see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10,

67 L.Ed.2d 207 (1981) ("there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit defendant's explanation").

6. The district court stated that:

[t]he plaintiff has the burden of showing that the employer *knew* that the employee engaged in the protected activity and that the employer acted in retaliation for that activity. [ ]
* * * *
[V]iewing all the evidence ... it is not reasonable to infer that Defendant *knew* that Ms. Godsey filed the OSHA complaint.... At most, Plaintiff's evidence permits the inference that Ms. Godsey was one of several individuals the Gebels might have *suspected* were responsible for filing the [OSHA] complaint.
*Lynn Martin, Sec'y of Labor v. Hoy Shoe Co.*, No. 91–1583–C–7, slip op. at 5 (E.D.Mo. Aug. 13, 1992).

The district court relied on our decisions in *Wolff v. Berkley, Inc.,* 938 F.2d 100, 103 (8th Cir.1991) and *Gilreath v. Butler Manufacturing Co.,* 750 F.2d 701, 703 (8th Cir.1984) for the proposition that a plaintiff must show that the employer had actual knowledge that a particular employee engaged in protected activity.

*Wolff* is distinguishable from the instant case in a number of respects. *Wolff* involved a female plaintiff that worked for Berkley Inc., a fishing tackle and sporting goods manufacturer. *Wolff,* 938 F.2d at 101. After becoming embroiled in an ongoing dispute with another employee, Wolff and the other employee were discharged. In essence, the dispute arose from dissatisfaction on the part of the other employee over Wolff's promotion. *Id.* As a result of this dissatisfaction, the other employee criticized, harassed, insulted and behaved in a generally irritating manner toward Wolff. *Id.* Wolff made numerous complaints to management regarding the other employee's behavior. *Id.* As noted above, when the dispute continued without resolution, Wolff and the other employee were discharged. *Id.*

The other employee had previously been embroiled in a similar dispute with a male co-worker. *Id.* That dispute, however, resolved when the male co-worker was transferred for reasons unrelated to the dispute. *Id.* No further action, related to the dispute, was taken against either employee. *Id.*

Wolff brought suit alleging, among other things, that her discharge was in retaliation for her complaining to management that she was treated differently than the male employee involved in the similar previous dispute. *Id.* at 101, 103. On appeal, this Court held that to prevail on a claim of retaliatory discharge a plaintiff must demonstrate a causal relationship between the statutorily protected activity and her discharge and that "[s]uch a causal link does not exist if the

employer is not *aware* of the employee's statutorily protected activity." *Id.* at 103 (citations omitted) (emphasis added).

*Wolff* was not a summary judgment case.[7] Our review in *Wolff,* on the retaliation claim, came after a full trial on the merits, in which the district court made a factual finding that the proof was insufficient to find that Wolff complained to management that she was being treated differently from male employees. *Id.* Wolff had claimed that she had complained to management, but company officials denied such complaints. *Id.* The trial court "made a legitimate choice between two versions of the facts," and finding support in the record for the trial court's finding this Court deferred. *Id.* The circumstances of *Wolff* are those in which the fact that statutorily protected activity had taken place was never brought home to the employer. In context, our holding in *Wolff* that a "causal link does not exist if the employer is not *aware* of the employee's statutorily protected activity" rested on the employer's lack of knowledge that statutorily protected activity had occurred at all. In *Wolff,* this Court did not confront nor decide the issue of whether an adverse employment action based upon the employer's *suspicion* that the affected employee engaged in protected activity is violative of § 11(c).

Similarly, *Gilreath* was not a summary judgment case.[8] It involved review of the district court's determination after a trial on the merits. *Gilreath,* 750 F.2d at 701. Regarding Gilreath's retaliatory discharge claim, this Court agreed with the district court's finding on the basis that Gilreath presented no evidence in support of his claim. *Id.* at 703. Specifically, this Court stated that "Gilreath had the initial burden to prove [his employer] had knowledge of his alleged protestations and . . . acted in retaliation by discharging him. [And that he] did not present *any evidence* in support of his claim." *Id.* (citations omitted).

---

7. Wolff argued on appeal that she had clearly made a prima facie case on her discrimination counts. We did not reach this issue, however. To the contrary, we noted that the "point [was] moot because the district court denied a motion for directed verdict [on the discrimination counts], proceeded to trial, and ruled on the merits. Consequently, whether Wolff established

a prima facie case [was] no longer relevant." *Wolff,* 938 F.2d at 103 n. 3 (citations omitted).

8. Again, we did not review the sufficiency of Gilreath's prima facie showing. *Gilreath,* 750 F.2d at 702–03.

Careful reading of *Wolff* and *Gilreath* does not support nor compel a rule that would require, in every case of alleged retaliatory discharge, that plaintiff show that the employer knew to an absolute certainty the identity of the employee who engaged in protected activity. Neither does it recast the structure for the court's analysis in such cases.

As noted above, for plaintiff to state a prima facie case, he or she must show participation in a protected activity, a subsequent adverse action by the employer, and *some evidence of a causal connection* between the protected activity ... and the subsequent adverse action." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993) (citations omitted) (emphasis added). Circumstantial evidence is sufficient to establish a causal connection between the protected activity and the adverse employment action. *Id.* Accordingly, proper analysis in this case requires us to determine whether plaintiff has presented some evidence of a causal connection between the protected activity and the subsequent discharge.

Taken in the light most favorable to the Secretary, the facts in this case are: Ms. Godsey initially complained to co-workers and Robert Gebel about health concerns she had arising out of the use of certain chemical spray in operation of the 1700 machine she worked on. Subsequent to these oral complaints, she informally complained to OSHA. She followed her informal complaint with a formal complaint to OSHA that gave rise to an on-site inspection and investigation of the Hoy Shoe plant where Ms. Godsey worked. During the on-site inspection, the OSHA compliance officer informed William Gebel that the inspection and investigation resulted from an employee complaint. William Gebel pressed the compliance officer for the identity of the complaining employee and appeared quite upset when he was unable to get it. William Gebel indicated that he thought the

employee who filed the OSHA complaint was a woman who had made past complaints. In his report, the compliance officer noted that it was his opinion William Gebel would harass the complaining employee if he attained her identity.

Three days after the on-site inspection, Ms. Godsey was discharged. At that time, Robert Gebel told her that "if you don't think my father knows what is going on in this factory, you're crazy." Hoy Shoe states that Godsey was fired for excessive tardiness, in violation of company policy. A review of Hoy Shoe's personnel records, however, admits that employees with equivalent or worse records than Ms. Godsey were not discharged, and, in fact, prior to Ms. Godsey's discharge, no employee had ever been disciplined under the announced policy. The district court concedes that the above-related evidence supports an inference that the Gebels suspected that Godsey might have filed the OSHA complaint.[9]

■ The proper inquiry is whether the above-recited evidence suggests *a causal connection* between the protected activity and the subsequent adverse action sufficient to defeat summary judgment. Subsumed in this inquiry is the question of whether, as a matter of law, a plaintiff may establish a causal connection between his or her protected activity and an adverse employment action by presenting evidence sufficient to establish that: a particular employee engaged in protected activity, in the form of lodging an OSHA complaint; that the employer was aware that some employee had filed or made such a complaint; that the employer suspected that employee of having made the complaint; and that the employer took retaliatory action based on its suspicion. We answer in the affirmative on both counts.

■ The key to establishing a causal connection focuses on the employer's motivation or intention with regard to the adverse em-

9. In our view, we believe the evidence, taken in the light most favorable to the Secretary, could support an inference that the Gebels, while not knowing to an absolute certainty that Godsey was the complaining employee, had made their own determination that she had, in fact, lodged the complaint. Whether or not the Gebels' state- ments that they actually believed someone else was responsible for the complaint and discharged Godsey because of her tardiness are truthful or merely pretextual turns largely on credibility and should be assessed, in that light, by the trier of fact and not disposed of on summary judgment.

ployment action. To establish a causal connection, the evidence should support a finding that retaliatory motive animated the adverse employment action. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980).

It is beyond question that employers make employment decisions based upon what they actually know to be true. Likewise, common sense and experience establish that employers also make employment decisions on what they suspect or believe to be true. It would be a strange rule, indeed, that would protect an employee discharged because the employer actually *knew* he or she had engaged in protected activity but would not protect an employee discharged because the employer merely *believed* or *suspected* he or she had engaged in protected activity. *See generally N.L.R.B. v. Ritchie Mfg. Co.*, 354 F.2d 90, 98 (8th Cir.1966) (fact that employer thought or believed terminated employee was a union activist and that belief was the basis for employee's discharge was sufficient to establish violation of NLRA—need not show employer actually knew of employee's union activity); *see also Brock v. Richardson*, 812 F.2d 121, 124–25 (3d Cir.1987) (discharge motivated by erroneous belief on part of employer that employee engaged in protected activity under the FLSA sufficient to trigger anti-retaliation provisions of the Act); *Donovan v. Peter Zimmer America, Inc.*, 557 F.Supp. 642, 652 (D.S.C.1982) (discharge of three employees because employer not able to determine which of the three actually filed OSHA complaint violates anti-retaliation provisions of OSH Act as to all three).

Construing § 11(c), the OSH Act's anti-retaliation provision, to protect employees from adverse employment actions because they are suspected of having engaged in protected activity is consistent with the general purposes of the Act and the specific purposes of the anti-retaliation provisions.

The announced purpose of the OSH Act is to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C.A. § 651(b) (1985). The OSH Act is safety legislation that is remedial and preventative in nature and is to be liberally construed to effectuate its congressional purpose. *See Whirlpool Corp. v. Marshall*, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980).

Congress recognized employees to be a valuable and knowledgeable source of information regarding work place safety and health hazards. *See* S.Rep. No. 1282, 91st Cong.2d Sess. 11 (1970) U.S.Code Cong. & Admin.News p. 5177. "Congress was aware of the shortage of federal and state occupational safety inspectors, and placed great reliance on employee assistance in enforcing the Act." *Marshall v. Whirlpool Corp.*, 593 F.2d 715, 722 (6th Cir.1979), *aff'd*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980) (citing various legislative history). As such, Congress provided, among other things, a mechanism by which employees could file complaints. 29 U.S.C.A. § 657(f). This provision allows a complaining employee to elect to file his or her complaint confidentially and prohibits the Secretary from disclosing the identity of such complaining employee. *Id.* Congress further included a broad anti-discrimination provision that prohibits employers from retaliating against a complaining employee. 29 U.S.C.A. § 660(c). The primary purpose of this provision is to ensure that violations of the OSH Act are reported. *Donovan v. R.D. Andersen Const. Co.*, 552 F.Supp. 249, 251 (D.Kan.1982) (citation omitted). The OSH Act's requirement that employers not retaliate against complaining employees, like the Act generally, should be read broadly, "otherwise the Act would be gutted by employer intimidation." *Whirlpool Corp.*, 593 F.2d at 722. As noted by the Sixth Circuit, in *Whirlpool Corp.*, "it is clear that without employee cooperation, even an army of inspectors could not keep America's work places safe." *Id.*

It seems clear to this Court that an employer that retaliates against an employee because of the employer's *suspicion* or *belief* that the employee filed an OSHA complaint has as surely committed a violation of § 11(c) as an employer that fires an employee because the employer *knows* that the employee filed an OSHA complaint. Such construction most definitely furthers the purposes of the Act generally and the anti-retaliation provision specifically. To hold otherwise would

allow an area of employer misconduct that would surely have a chilling effect on the meaningful filing of employee complaints under the Act.

### III.

The Secretary also urges that Hoy Shoe's refusal to reinstate Ms. Godsey amounted to an independent violation of § 11(c) of the OSH Act. 29 U.S.C.A. 660(c). The district court did not in its original memorandum opinion and order consider this issue at all. At this time, without an initial determination by the district court, this Court declines to address the issue.

### CONCLUSION

For the aforementioned reasons, the judgment of the district court is **REVERSED and REMANDED** for further proceedings consistent with this opinion.