**ARKANSAS ACORN FAIR HOUSING, INC., Plaintiff,**

v.

**GREYSTONE LIMITED CORPORATION, d/b/a Greystone, A Golf Community, Defendant.**

No. LR–C–97–336.

United States District Court,
E.D. Arkansas,
Western Division.

Jan. 27, 1998.

Alexandra E. Mora, ACORN Law for Educ., Representation and Training, New Orleans, LA, Edward G. Adcock, Little Rock, AR, for Plaintiff.

Bettina E. Brownstein, Don S. McKinney, Wright, Lindsey & Jennings, Little Rock, AR, John V. Phelps, Womack, Landis, Phelps, McNeill & McDaniel, Jonesboro, AR, for Defendant.

## *MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT*

EISELE, Senior District Judge.

Before the Court is defendant Greystone Development, Ltd. Co.'s [1] ("Greystone") Motion for Summary Judgment. Greystone asserts that plaintiff Arkansas ACORN Fair Housing, Inc. ("AFH") does not have standing to maintain this lawsuit. Plaintiff opposes defendant's motion. The parties have briefed the issue, and the Court has reviewed the parties' submissions. For the reasons set forth in this memorandum opinion, the Court will grant defendant's motion.

### I. BACKGROUND

AFH brought this action under the Fair Housing Act of 1968 ("FHA").[2] AFH is a non-profit organization whose stated purpose is to promote fair housing in the State of Arkansas. It claims its activities include "education and information services for low and moderate income people and the housing industry, housing referral services, mediation and conciliation of disputes arising from fair

---

1. incorrectly identified in the Complaint as Greystone Limited Corporation.

2. 42 U.S.C. § 3601, *et seq.*

housing violations, investigation and verification of housing discrimination, and private enforcement of laws against discrimination in housing." (Complaint ¶ 4). AFH states that its investigative work can be grouped into two categories: (1) testing and (2) monitoring of advertising. (Doc. # 17 at 1).

Greystone owns properties in Cabot, Arkansas, and at times relevant to this lawsuit was developing a residential community there. Prior to the filing of this lawsuit, Greystone created and marketed advertising brochures promoting its community. The parties agree that, before plaintiff initiated this lawsuit, Greystone's advertising materials did not feature African–American models or contain an Equal Housing Opportunity logo.

AFH alleges Greystone discriminated against protected classes of people through certain tactics, including "advertising in a manner that indicates an illegal preference and exclusivity based on race and/or color." (Complaint ¶ 8). Plaintiff attaches to its Complaint a single advertisement depicting two white men playing golf. (Complaint, Exh. No. 1).[3] The ad also contains a picture of a home, a Greystone logo, and text describing the community. AFH contends Greystone's acts injured its ability to promote fair housing in Arkansas and help minority home seekers. Plaintiff further claims it suffered economic losses in staff pay, in money spent on volunteer services, and in other efforts thwarted by Greystone. (Id. ¶ 13). AFH seeks injunction, compensatory, punitive and exemplary damages; and a declaratory judgment establishing that Greystone violated 42 U.S.C. § 3604.

Greystone argues that AFH does not have standing to bring this lawsuit because AFH has not suffered any *injury in fact* as a result of Greystone's conduct. If AFH has not suffered injury in fact, this Court will not have subject matter jurisdiction.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56, *quoted in Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the United States Supreme Court stated that regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. *Id.* at 3187 (quoting *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated that at the summary judgment stage, the role of the district court is not to weigh the evidence and determine its truth, but rather to determine whether there is any genuine issue of fact for trial. In making this determination, the Court must view the evidence in the light most favorable to the nonmovant, affording that party the benefit of all reasonable inferences that can be drawn therefrom. *Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 364 (8th Cir.1994).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be *evidence from which the jury could reasonably find for the plaintiff.*" *Liberty Lobby*, 106 S.Ct. at 2512 (emphasis supplied). If, under such a view of the evidence, it is clear that no more than a "metaphysical doubt" exists as to the material facts of the case and that the movant is entitled to judgment under such facts, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

**3.** Plaintiff does not indicate from what source this advertisement was taken.

## III. ANALYSIS

### A. Standing under Article III and the Fair Housing Act

■■■ Federal courts are courts of limited jurisdiction. The United States Constitution limits such jurisdiction to actual cases or controversies. U.S. Const., Art III, § 2; *Raines v. Byrd*, —— U.S. ——, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). Constitutionally, for a plaintiff to meet basic standing requirements, it must be able to show it suffered injury that is fairly traceable to a defendant's conduct, and that such injury is likely to be redressed by a favorable decision in court. *Id.* "[T]he federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997). However, Congress intended to loosen · traditional standing requirements to the extent permitted by the Constitution in actions brought under the Fair Housing Act. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982). Prudential standing limitations, therefore, do not apply. The language of § 3613 is broad, guaranteeing that any aggrieved person may enforce the FHA in the appropriate district court. 42 U.S .C. § 3613(a)(I)(A).

■■■ Under a general standing analysis, the party invoking federal jurisdiction bears the burden ·of establishing the elements of standing. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990). The *Lujan* Court noted that the burden of proof increases at each stage of the proceedings:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." [citation omitted] *In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegation," but must "set forth" by affidavit or other evidence "specific facts,"* Fed. Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be tak-

en to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." Gladstone, supra, 441 U.S., at 115, n. 31, 99 S.Ct., at 1616, n. 31.

*Lujan*, 112 S.Ct. at 2137 (emphasis and alterations supplied). In the case presently before the Court, this heightened standard becomes critical. ·

In *Havens*, the United States Supreme Court concluded that an organization—Housing Opportunities Made Equal ("HOME")—had standing in its own right under the FHA's private enforcement provisions. HOME was a nonprofit organization with a purpose of making "equal opportunity housing a reality in the Richmond Metropolitan Area." *Id.* at 1119. HOME conducted housing counseling services and investigated and referred complaints concerning housing discrimination. *Id.* The defendant organization owned two apartment complexes and was accused of "steering" potential black renters to an integrated complex, and away from a complex predominately occupied by white renters. *Id.,* n. 4. Conversely, potential white renters were told that the predominately white complex had vacancies. *Id.* The Supreme Court concluded:

> If, as broadly alleged, petitioners' steering practices have **perceptibly impaired HOME's ability to provide counseling and referral services** for love and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization activities—with the **consequent drain on the organization's resources** —constitutes far more than simply a setback to the organization's abstract social interests, *see Sierra Club v. Morton*, 405 U.S. at 739, 92 S.Ct. at 1368.

*Havens*, 102 S.Ct. at 1124 (emphasis supplied). Thus, HOME's alleged injury to its activities and resources gave it standing in its own right to sue under the .FHA.

The *Havens* case involved affirmative acts which perceptibly treated potential minority and white renters differently. Most provisions of the FHA proscribe acts of affirma-

tive discrimination.[4] ACH makes a claim based upon the effect of alleged discriminatory advertising.[5] In the instant action, ACH alleges that Greystone's acts (advertising practices) injured its ability to promote fair housing in Arkansas and help minority home seekers. AFH further claims it suffered economic losses in staff pay, in money spent on volunteer services, and in other efforts thwarted by Greystone.

### B. The Parties' Proof

#### 1. Defendant:

In support of its summary judgment motion, defendant proffers the affidavit of David McKinney, General Manager of Greystone, and a May 20, 1997 letter from Alexandra Mora to Mr. J.V. Phelps. Through these exhibits, Greystone makes clear that AFH never contacted Greystone or attempted conciliation prior to filing the instant lawsuit, Mr. McKinney acknowledges Greystone's failure to incorporate African–American models and the Equal Housing Opportunity logo into its advertisements.

Ms. Mora, on behalf of ACORN Law for Education, Representation & Training ("ALERT"), penned a letter dated May 20, 1997 to then-defense-counsel J.V. Phelps. That letter confirms that pre-litigation conciliation efforts were not made. "AFH rarely attempts pre-litigation conciliation" she wrote "because it is rarely successful." Ms. Mora further stated, "Usually, attempts at conciliation merely delay the inevitable—the filing of the lawsuit." However, Ms. Mora acknowledged that AFH was interested in settling the case and that AFH, "also seeks $15,000.00 in settlement of all claims against your client including attorney's fees and costs[.]"

Mr. McKinney states he first learned of AFH's discrimination allegations when this lawsuit was filed and subsequently reported in the newspaper. After learning that the plaintiff was contending that Greystone may have violated federal law, he claims he "took steps to ensure that all future advertising would include [African–American] models and [the Equal Housing Opportunity] logo." He contends that if AFH had contacted Greystone prior to filing suit, Greystone would have instituted these changes without the necessity of a lawsuit.

#### 2. Plaintiff:

Plaintiff responds with the affidavit of Margaret Dyer, an employee of AFH. She states she was hired to direct AFH's fair housing work. She asserts that a part of AFH's mission is to eradicate illegal discriminatory practices in Arkansas, and that the work performed at her direction includes "loan counseling to homebuyers, providing outreach and education on fair housing issues, investigating housing complaints involving discrimination, auditing various segments of the housing industry, and monitoring housing advertising."

She claims that during the investigation of Greystone she or other staff members spent a minimum of 15 hours per month monitoring advertising of housing providers, including

---

**4.** The FHA prohibits discrimination based upon race, color, religion, sex, familial status, or national organization. *See* 42 U.S.C.A. § 3604 (West 1994). Among others, the proscribed acts include refusing to sell or rent a dwelling after making a bona fide offer (§ 3604(a)); discriminating against a person in the terms, conditions, or privileges of sale or rental (§ 3604(b)); and indicating that a dwelling is not available for inspection, rental or sale when it is in fact so available (§ 3604(d)). These prohibited acts involve overt acts of discrimination, and the merits are generally analyzed under the three part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). On the other hand, the case before the Court involves the perception of the ordinary reader: thus the inquiry requires a more subjective fact analysis. *See Jancik v. Department of Housing & Urban Development*, 44 F.3d 553 (7th Cir.1995): *Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644 (6th Cir.1991); *Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir.1991), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991);

**5.** "It shall be unlawful ... [t]o make, print, or publish, or cause to be made, printed or published any notice, statement. or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C.A. § 3604(c) (West 1994).

advertising by defendant. She further states that during that time period, staff members spent a minimum of 35 hours per month counteracting the effects of discriminatory advertising practices through education and outreach.

The Court notes that there is no effort by plaintiff to quantify the injury it claims the defendant's advertisement caused it. It acknowledges that part of its routine work includes monitoring advertising of housing providers. It must be assumed, therefore, that it would do this without respect to the results of such monitoring. In other words, it would obviously check all such ads even if it turned out that each used black models and carried the logo. So perhaps plaintiff is contending that when it finds an ad such as Greystone's it is called upon to take further action which it would not have to take if the ad featured blacks and had the logo. But what action? Here it simply filed a lawsuit without more. And, although plaintiff states it spends 15 hours per month monitoring advertisements, it makes no effort to quantify the time, and financial consequences, of dealing with Greystone's ad. The plaintiff has simply failed to carry its burden of showing that it has suffered any injury in fact as a consequence of defendant's ad.

### C. Analysis

■ *Lujan* establishes that the burden of proving standing increases at each stage of the proceedings. In this case, the Court notes that it stayed further discovery pending the resolution of this motion for summary judgment. Therefore, the proof the parties have come forward with is understandably limited to the sworn affidavits of employees of the respective parties. However, a plaintiff who files a lawsuit should have access to information regarding any injury it suffered. The parties agree that plaintiff did not contact the defendant or engage in any prelitigation conciliation efforts. Absent plaintiff establishing through evidence specific facts supporting its claimed injury in fact, the Court has no basis for finding that plaintiff has standing to bring this action. AFH's allegations in its Complaint are insufficient to overcome defendant's motion for summary judgment.

In an attempt to resolve this issue consistent with other cases handled by the other judges in the Eastern District of Arkansas, the Court checked with the Clerk's office and discovered that AFH filed at least fifteen FHA lawsuits in this district during 1997. Those cases are at various stages of resolution. Plaintiff has cited the case *Arkansas ACORN Fair Housing, Inc. v. Pulaski Bank Trust Co., et al.,* USDC No. LR–C–97–75, a case which was allowed to escape a motion to *dismiss* regarding standing. Of course, the pending motion for summary judgment involves a heightened standard of proof. Furthermore, the *Pulaski Bank* case involved allegations of discriminatory loan practices. It is interesting to note that the Court eventually granted Pulaski Bank's motion for summary judgment as to the merits of AFH's discriminatory treatment and discriminatory effects claims.[6]

Judge Susan Weber Wright recently granted the defendant's motion for directed verdict in an advertising discrimination case. *Arkansas ACORN Fair Housing, Inc. v. Southwest Nursing Homes, Inc.,* USDC No. LR–C–97–72, Doc. #29.[7] That case survived summary judgment, with the Court concluding AFH had met "the minimum constitutional requirements" to have standing under the FHA.[8] In response to Southwest Nursing's motion for summary judgment, AFH also came forward with an affidavit from Margaret Dyer. She contended that the "organization's time and resources have been diverted from educational activities that would have otherwise been provided to minority homeseekers." The Court concluded that this allegation was sufficient to confer standing under the *Havens* holding. However, it took a different view during the trial.

---

6. *Id.* Doc. #34. That case is now on appeal to the Court of Appeals for the Eighth Circuit.

7. Also on appeal to the Court of Appeals for the Eighth Circuit.

8. LR–C–97–72. Doc. #25.

After AFH presented its case, Southwest Nursing moved for directed verdict. The Court granted defendant's motion and entered findings of fact and conclusions of law. It clearly indicated that it was probably wrong in earlier concluding that AFH had standing. The Court noted that the case involved a tester (which the present case does not) who went to the defendant's office, picked up a brochure, and delivered a report to Ms. Dyer at AFH. After receiving the report, AFH filed a lawsuit "without any investigation as to whether the defendant organization would stop distributing it if they asked it to." Judge Wright went on to conclude:

> You've got to mitigate your damages under law. . . . [Y]ou have to show you tried. That means cut short your damages. You can't manufacture them. And they ended up manufacturing damages without any attempt to mitigate by filing the lawsuit, by generating all kinds of formulas for diversion of resources and staff time, when, in fact, we don't know that they could have perhaps called the nursing home and the nursing home would have destroyed the remaining pamphlets. That might have been it. They could have also called the nursing home and asked them to put the logo in the yellow pages.
>
> In the absence of any iota of discriminatory intent other than the brochure itself, and in the absence of any actual harm to anyone who was turned away or who failed to apply on the basis of this brochure, I cannot in good faith send this to [the jury.]

LR–C–97–72, Doc. # 28 at 4.

Later, the Court stated:

> I think that the plaintiff . . . got into the courthouse and had standing by claiming that it had diverted resources in fighting the discriminatory activity of the defendant. And I thought that under the *Haven's* [sic] case that was sufficient to have standing. But, then, once we got into court and I fully realized what the circumstances were with respect to the filing of the complaint and the failure to attempt to mitigate and the request for damages based on answers to interrogatories, you know, in other words, the defendant's dis-

covery when probably a lawsuit in this case—I shouldn't say probably could, it might have been averted.

*Id.* at 6–7.

In the present case, the Court concludes that AFH does not have standing to bring this action against Greystone. Clearly, the mere allegation that AFH suffered damages is not enough to escape summary judgment. A plaintiff must proffer evidence from which a reasonable jury could find for it upon its claim that defendant's publishing of the advertisement caused it injury in fact. *Liberty Lobby*, 106 S.Ct. at 2512. In response to a summary judgment motion, the plaintiff may no longer rest on mere allegations; he must set forth "specific facts" by affidavit or other evidence. *Lujan*, 112 S.Ct. at 2137. AFH has failed to come forward with specific facts establishing that it suffered injury in fact as a direct result of the advertising utilized by Greystone.

Contrary to the situation in *Havens*, AFH has failed to produce *specific evidence* supporting an impairment of its ability to perform its regularly conducted activity. Plaintiff's conclusory assertion *in its Complaint* that it "has been injured in its ability to promote fair housing in Arkansas, and in its ability to help minority homeseekers." (Complaint ¶ 13) is not enough. And its affidavit submission adds nothing of consequence.

In the *Southwest Nursing* case, Judge Wright allowed AFH to evade summary judgment based upon its allegation of injury. Respectfully, this Court is of the opinion that she did not hold AFH to the heightened summary judgment standard of coming forward with specific evidence of injury and standing. However, it appears she reconsidered this decision after the plaintiff's proof at trial, granting defendant's motion for directed verdict by applying essentially the same standard as that applied upon motion for summary judgment. So this Court sees its present holding as being consistent with Judge Wright's ultimate views on this issue. Furthermore, the significance of Judge Wright's granting a directed verdict goes beyond the issue of standing, suggesting that plaintiff there did not produce enough evidence to present the case to the jury on the

merits. That issue is not presently before this Court, but it should give plaintiff pause here. Even if plaintiff's prevailed on the standing issue, is this really a case that it should pursue? There is no more important business for federal courts than that presented by cases of real discrimination. But unsubstantiated or frivolous cases can harm the cause of equal opportunity and diminish public Support for the legal process that is so necessary to vindicate such rights. The Court cannot state at this point that plaintiff's case can be so characterized, but there is enough revealed to justify this caution. *And see* Fed.R.Civ.P. 11.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to AFH, the Court concludes that there are no genuine issues of fact and that AFH has failed as a matter of law to establish its standing to maintain this action. For the reasons stated herein, the Court will grant defendant Greystone's motion for summary judgment.

IT IS THEREFORE ORDERED that defendant Greystone's Motion for Summary Judgment [9] be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiff's Complaint be, and it is hereby, DISMISSED.