# United States Court of Appeals for the Federal Circuit

2007-6001

RICHARD DUNCAN,

Petitioner,

v.

OFFICE OF COMPLIANCE,

Respondent,

and

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Respondent.

Jeffrey H. Leib, of Washington, DC, argued for petitioner.

William Wachter, Attorney, Office of the General Counsel, Office of Compliance, of Washington, DC, argued for respondent Office of Compliance. With him on the brief was Peter A. Eveleth, General Counsel.

Kelsi Brown Corkran, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent Office of the Architect of the Capitol. With her on the brief was Marleigh D. Dover, Attorney.

Appealed from: The Board of Directors of the Office of Compliance

# United States Court of Appeals for the Federal Circuit

2007-6001

RICHARD DUNCAN,

Petitioner,

v.

OFFICE OF COMPLIANCE,

Respondent,

and

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Respondent.

On petition for review of a decision of the Board of Directors of the Office of Compliance, 02-AC-59 (RP).

_____

DECIDED:  September 16, 2008

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> PROST.  Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

PROST, <u>Circuit Judge</u>.

Mr. Richard Duncan petitions for review of a decision of the Board of Directors of the Office of Compliance ("Board") dismissing his complaint against his employer the Office of the Architect of the Capitol ("AOC") for violation of section 207(a) of the Congressional Accountability Act of 1995 ("CAA"), codified at 2 U.S.C. §§ 1301-1438.

<u>Duncan v. Office of the Architect of the Capitol</u>, No. 02-AC-59(RP) (Sept. 19, 2006). We affirm.

## I. BACKGROUND

Mr. Duncan has been employed since 1986 as a mechanic in the Maintenance Division of the AOC. On September 5, 2002, Mr. Duncan, his immediate supervisor Robert Perry, and two other employees attempted to install a 550-pound fan motor in an air handling unit in the attic area of the East Wing of the U.S. Capitol. The record indicates that the space around the installation area was cramped, with some low ceilings, pipes, and duct work. Hard hat area signs were posted in the attic area, in accordance with the standards of the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 et seq. Mr. Duncan was the only employee wearing a hard hat during the fan motor installation.

As the four men attempted to lift the fan motor, Mr. Duncan's hard hat hit Mr. Perry's head. Mr. Duncan apologized. Mr. Perry asked him to remove the hard hat, but Mr. Duncan said nothing and did not remove the hard hat. During the second attempt to lift the fan motor, Mr. Duncan's hard hat once again hit Mr. Perry's head. Mr. Perry instantly responded with profanity, grabbing Mr. Duncan's hard hat and throwing it to the floor. Later that day, the team successfully lifted the fan motor into place.

Mr. Duncan filed an informal and then a formal grievance, in accordance with the procedures established by the CAA. He requested transfer to another AOC work area, claiming that Mr. Perry's act of forcibly removing the hard hat created a hostile work environment. The AOC denied the grievances and the requested transfer, and Mr. Duncan filed a complaint with the Office of Compliance under section 207(a) of the

CAA, 2 U.S.C. §1317(a), alleging retaliation. The hearing officer initially dismissed Mr. Duncan's complaint on the ground that section 207(a) does not include OSHA-related retaliation claims. The Board reversed the dismissal, ruling that section 207(a) does include OSHA-related retaliation claims.

On remand, the hearing officer ruled in favor of the AOC, finding that Mr. Duncan failed to show that Mr. Perry's removal of the hard hat was causally related to Mr. Duncan's silent refusal to remove the hard hat. The Board affirmed that decision, stating that it need not decide whether Mr. Duncan had engaged in protected activity in refusing to remove his hard hat, or whether Mr. Perry's forceful action was reasonably likely to deter protected activity. The Board concluded that Mr. Duncan failed to show that there was a causal connection between Mr. Duncan's silent refusal to remove the hard hat and Mr. Perry's removal of the hat after the second head-bump. Mr. Duncan appeals.

We have jurisdiction over this appeal of a final decision of the Board pursuant to 2 U.S.C. § 1407.

## II.  DISCUSSION

### A.  Jurisdiction

The CAA provides legislative branch employees with the protection of various labor and employment statutes, and it prohibits reprisal against any covered employee who opposes any practice made unlawful by the Act. 2 U.S.C. § 1317(a). The Office of Compliance is an independent agency within the legislative branch charged with enforcing the CAA. 2 U.S.C. § 1381.

The AOC argues that the CAA does not extend anti-reprisal protection to OSHA-related claims and that, accordingly, the Board lacked subject matter jurisdiction over Mr. Duncan's claim. We disagree. As argued by the Office of Compliance, the Board had subject matter jurisdiction over Mr. Duncan's claim because the express, unambiguous language of the CAA accords legislative employees anti-reprisal protection for OHSA-related claims.

Section 215 of the CAA states that "[e]ach employing office and each covered employee shall comply with the provisions of section 5 of [OSHA]." 2 U.S.C. § 1341. Section 5 of OSHA states, inter alia, that the employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards" and it also requires that the employer "comply with occupational safety and health standards promulgated under [OSHA]." 29 U.S.C. § 654(a). Thus, the CAA extends OSHA's workplace protections to legislative employees, making it unlawful for Congressional agencies to fail to comply with the substantive requirements of OSHA. Section 207(a) of the CAA states:

> It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed <u>any practice made unlawful by this Act</u>, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding <u>under this Act</u>.

2 U.S.C. 1317(a) (emphases added). Thus, the express language of the CAA accords legislative employees anti-reprisal protection for opposition to "any practice made unlawful by this Act," which, as we have previously explained, extends to OSHA-related claims.

The AOC argues that section 207 applies only to issues invoking the laws that are expressly mentioned in Part A of the CAA, and that because OSHA is mentioned only in Part C the anti-reprisal protections of the CAA do not extend to OSHA-related claims. Accordingly, in the AOC's view, there is no jurisdiction in the Board for OSHA-related retaliation claims. The AOC also argues that "Part A's title enumerates the federal laws to which it applies" and that "Congress did not include the OSHA in this list." The language used by Congress in section 207, however, clearly provides that it is applicable when a covered employee opposes any practice made unlawful "by this Act." Like the Board, we refuse to construe the placement of section 207(a) in Part A to trump its express language.

Additionally, the AOC argues that Congress did not waive its sovereign immunity regarding OSHA-related retaliation claims and that any ambiguity regarding the applicability of section 207 to OSHA-related retaliation claims must be construed in favor of sovereign immunity. Because the CAA unambiguously extends its anti-reprisal protections to OSHA-related claims, however, there is no impediment to the waiver of sovereign immunity in this case.

Finally, we note that the AOC and the Office of Compliance each argue that the legislative history of the CAA supports their respective positions as to the applicability of anti-reprisal protections to OSHA-related claims. While we agree with the Office of Compliance that the legislative history supports our conclusion that the CAA extends its anti-reprisal protections to OSHA-related claims, we do not rely on the legislative history in this case because our judicial inquiry was complete once we determined that the statutory language unambiguously resolves this issue. See Desert Palace, Inc. v.

Costa, 539 U.S. 90, 98 (2003) ("Our precedents make clear that the starting point for our analysis is the statutory text. And where, as here, the words of the statute are unambiguous, the 'judicial inquiry is complete.'" (citations omitted)).

Accordingly, we conclude that the Board properly determined that it had subject matter jurisdiction over Mr. Duncan's OSHA-related reprisal claim.

## B. Retaliation

We are obligated to affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence." See 2 U.S.C. § 1407(d); Britton v. Office of Compliance, 412 F.3d 1324, 1327 (Fed. Cir. 2005). In the present case, we conclude that substantial evidence supports the Board's determination that the removal of the hard hat by Mr. Perry after the second head-bump was a response to being hit in the head a second time, rather than a response to Mr. Duncan's prior refusal to remove the hard hat.

The Board noted that in order to meet the causation requirement, "Duncan would have to establish by direct or indirect evidence that Perry's action was motivated by Duncan's refusal to remove his hat." After considering the evidence presented, the Board concluded that, "[w]ithout additional evidence, Duncan fails to establish a nexus between his refusal to remove his hat, and his supervisor's removal of same." The record does not indicate that Mr. Perry disciplined or otherwise reacted negatively when Mr. Duncan ignored his order to remove his hard hat after the first head-bump. Rather, the crew proceeded with a second attempt to lift the fan with Mr. Duncan still wearing his hard hat. Only when Mr. Duncan bumped Mr. Perry's head with his hard hat during

this second attempt did Mr. Perry react with an outburst of anger. It is reasonable to conclude, as the Board did, that Mr. Perry was simply angry at being hit in the head with a hard hat irrespective of Mr. Duncan's prior refusal to remove it. Under the substantial evidence standard, we must therefore uphold the Board's finding that Mr. Duncan failed to meet the causation requirement of his reprisal claim under section 207(a).

Although Mr. Duncan's insistence on wearing a hard hat in a "hard hat area" may be protected by law, the head collisions appear to have been an unfortunate accident. While Mr. Perry's spontaneous response to the accidental head-bumps may have been inappropriate, these are not the kind of actions and reactions to which section 207(a) is directed.

We have considered, but reject, Mr. Duncan's remaining arguments.

## CONCLUSION

For the foregoing reasons, we affirm the Board's decisions that it had subject matter jurisdiction over Mr. Duncan's OSHA-related reprisal claim and that there was insufficient evidence to support said claim on the merits.

## AFFIRMED

# United States Court of Appeals for the Federal Circuit

2007-6001

RICHARD DUNCAN,

Petitioner,

v.

OFFICE OF COMPLIANCE,

Respondent,

and

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Respondent.

On petition for review of a decision of the Board of Directors of the Office of Compliance, Case No. 02-AC-59.

NEWMAN, <u>Circuit Judge</u>, dissenting.

My colleagues find that Supervisor Perry's angry and forceful reaction to being twice struck in the head by Duncan's hard hat is unrelated to Duncan's refusal to remove the hard hat after the first strike, and therefore that Duncan's complaint to the Board must be dismissed. I respectfully dissent.

Mr. Duncan filed these grievances after being disciplined for disobeying the supervisor's order to remove the hard hat in the hard hat area. At a minimum, the merits of his complaint require review. It cannot be disputed that the employer's action was taken because Mr. Duncan's hard hat struck Mr. Perry a second time, after Duncan declined to

remove his hard hat despite Perry's order. Mr. Duncan stated in this complaint to the Board that his supervisor's forceful and curse-laden action in grabbing the hat and throwing it on the floor created a hostile work environment. It was prima facie intimidating, and Duncan did not replace his hard hat.

The Architect of the Capitol argues that the Congressional Accountability Act does not provide legislative-branch protection against employment actions that may violate the provisions of the Occupational Safety and Health Act. Whether the OSHA was violated underlies the issues before the Board. My colleagues appear to excuse the entire battery of events, on the theory that Duncan's refusal to remove his hard hat after its first strike to Perry's head had no causal relation to the ensuing events, and therefore that OSHA-prohibited retaliation or intimidation cannot lie.

DISCUSSION

Richard Duncan and three co-workers, one of whom was his immediate supervisor Robert Perry, were attempting to install a 550-pound replacement motor in an air handling unit in the attic area of the Capitol's East Wing. The record describes the East Attic as having some low ceilings that prevent persons from standing erect: low-hanging fixtures, pipes, duct work, valves, and metal projections. Hard hat signs were posted in this area, in accordance with the standards of the Occupational Safety and Health Act, 29 U.S.C. §651 et seq. Mr. Duncan was the only workman wearing a hard hat during the installation. The record states, in passing, that the posting of these hard hat signs was part of Mr. Duncan's job responsibility.

While the four men were attempting to lift the heavy motor, the motor slipped from their collective grasp and the brim of Duncan's hard hat accidentally "knocked heads" with

Perry's forehead. Duncan apologized. Perry told Duncan to remove the hat, but Duncan did not respond and did not remove the hat. Another lift was attempted, the heavy motor again slipped, and the brim of Duncan's hard hat again hit Perry's unhatted head. Perry, cursing, grabbed the hat from Duncan's head and threw it on the floor. A higher-level supervisor entered an adverse report in Duncan's personnel file, as a disciplinary action for Duncan's failure to follow his supervisor's order.

Duncan's position before the Board and on this appeal is that he was wearing a hard hat as required by OSHA, pointing out that Section 5 of the OSHA requires that the employer furnish "employment and a place of employment which are free from recognized hazards" and "comply with occupational safety and health standards promulgated under OSHA." Duncan argued that Perry's act of forcibly and angrily removing the hard hat created "an immediate, violent, and hostile work environment." The Board considered the OSHA prohibition of reprisal and intimidation, and concluded that Duncan's refusal to obey the order to remove his hard hat, after its first strike to Perry's forehead, had no causal connection to Perry's angry and violent action after the second strike to his forehead. The Board held that the second head strike was an "intervening cause" of Perry's intemperate response, and thus that Perry was not retaliating for Duncan's compliance with the OSHA requirements. It defies logic to rule that the first head-strike and Duncan's refusal to remove his hard hat had no causal connection to Perry's reaction to the second head-strike.

On this appeal, no party has taken the position adopted by the panel majority, and no party has argued that Perry's combination of curse and force did not deter Mr. Duncan from wearing his hard hat. Indeed, he did not wear the hat for the remainder of the

installation. And no party has argued that the first head-strike and Duncan's refusal to remove the hat were not factors in the later intemperate response. Whatever went awry in this employment relation, it is not properly disposed of by pretending that some of the contributing events do not count.

Although it does seem to me that these unfortunate accidents need not have escalated into this federal case, the discipline against Duncan was for refusing to follow the supervisor's order to remove the hard hat. Although the record states that the disciplinary action was removed from Duncan's record, the grievances continued, apparently because his request to be transferred to another work area -- the only relief he requested -- was refused. However, instead of considering this aspect, the Board ruled that Duncan had nothing to complain about. This court agrees, sustaining the Board's reasoning that there was no causal relation between the first head-strike and Duncan's refusal to remove the hard hat, and Perry's angry response to the second head-strike. This strained logic cannot be supported.

I would analyze the situation in light of the recognition of precedent that "the requirements of the job and the tolerable limits of conduct in a particular setting must be explored." Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976). I would invite attention to precedent concerning the role of intent in asserted retaliation and intimidation in OSHA violations, for although "bad intent" has not been directly charged, Mr. Duncan has raised charges of hostile work environment. The requirement of intent as an element of retaliation has support in precedent; for example, In Reich v. Hoy Shoe Co., 32 F.3d 361, 367-68 (8th Cir. 1994) the court inferred bad intent when a motive to retaliate was shown. The better approach to this appeal is to consider

2007-6001                                              4

the entirety of the facts, the applicable law, and the Board's application of the Congressional Accountability Act, in accordance with congressional intent. I must, respectfully, dissent from the perfunctory treatment of the issues raised by Mr. Duncan on this appeal.