NEWMAN, Circuit Judge,
dissenting.
My colleagues find that Supervisor Perry’s angry and forceful reaction to being twice struck in the head by Duncan’s hard hat is unrelated to Duncan’s refusal to remove the hard hat after the first strike, and therefore that Duncan’s complaint to the Board must be dismissed. I respectfully dissent.
Mr. Duncan filed these grievances after being disciplined for disobeying the supervisor’s order to remove the hard hat in the hard hat area. At a minimum, the merits of his complaint require review. It cannot be disputed that the employer’s action was taken because Mr. Duncan’s hard hat struck Mr. Perry a second time, after Duncan declined to remove his hard hat despite Perry’s order. Mr. Duncan stated in this complaint to the Board that his supervisor’s forceful and curse-laden action in grabbing the hat and throwing it on the floor created a hostile work environment. It was prima facie intimidating, and Duncan did not replace his hard hat.
The Architect of the Capitol argues that the Congressional Accountability Act does not provide legislative-branch protection against employment actions that may violate the provisions of the Occupational Safety and Health Act. Whether the OSHA was violated underlies the issues before the Board. My colleagues appear to excuse the entire battery of events, on the theory that Duncan’s refusal to remove his hard hat after its first strike to Perry’s head had no causal relation to the ensuing events, and therefore that OSHA-prohibited retaliation or intimidation cannot lie.
DISCUSSION
Richard Duncan and three co-workers, one of whom was his immediate supervisor Robert Perry, were attempting to install a 550-pound replacement motor in an air handling unit in the attic area of the Capitol’s East Wing. The record describes the East Attic as having some low ceilings that prevent persons from standing erect: low-hanging fixtures, pipes, duct work, valves, and metal projections. Hard hat signs were posted in this area, in accordance with the standards of the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. Mr. Duncan was the only workman wearing a hard hat during the installation. The record states, in passing, that the posting of these hard hat signs was part of Mr. Duncan’s job responsibility.
While the four men were attempting to lift the heavy motor, the motor slipped from their collective grasp and the brim of Duncan’s hard hat accidentally “knocked heads” with Perry’s forehead. Duncan apologized. Perry told Duncan to remove the hat, but Duncan did not respond and did not remove the hat. Another lift was attempted, the heavy motor again slipped, and the brim of Duncan’s hard hat again hit Perry’s unhatted head. Perry, cursing, grabbed the hat from Duncan’s head and threw it on the floor. A higher-level supervisor entered an adverse report in Duncan’s personnel file, as a disciplinary action for Duncan’s failure to follow his supervisor’s order.
Duncan’s position before the Board and on this appeal is that he was wearing a hard hat as required by OSHA, pointing out that Section 5 of the OSHA requires that the employer furnish “employment *1382 and a place of employment which are free from recognized hazards” and “comply with occupational safety and health standards promulgated under OSHA.” Duncan argued that Perry’s act of forcibly and angrily removing the hard hat created “an immediate, violent, and hostile work environment.” The Board considered the OSHA prohibition of reprisal and intimidation, and concluded that Duncan’s refusal to obey the order to remove his hard hat, after its first strike to Perry’s forehead, had no causal connection to Perry’s angry and violent action after the second strike to his forehead. The Board held that the second head strike was an “intervening cause” of Perry’s intemperate response, and thus that Perry was not retaliating for Duncan’s compliance with the OSHA requirements. It defies logic to rule that the first head-strike and Duncan’s refusal to remove his hard hat had no causal connection to Perry’s reaction to the second head-strike.
On this appeal, no party has taken the position adopted by the panel majority, and no party has argued that Perry’s combination of curse and force did not deter Mr. Duncan from wearing his hard hat. Indeed, he did not wear the hat for the remainder of the installation. And no party has argued that the first head-strike and Duncan’s refusal to remove the hat were not factors in the later intemperate response. Whatever went awry in this employment relation, it is not properly disposed of by pretending that some of the contributing events do not count.
Although it does seem to me that these unfortunate accidents need not have escalated into this federal case, the discipline against Duncan was for refusing to follow the supervisor’s order to remove the hard hat. Although the record states that the disciplinary action was removed from Duncan’s record, the grievances continued, apparently because his request to be transferred to another work area — the only relief he requested — was refused. However, instead of considering this aspect, the Board ruled that Duncan had nothing to complain about. This court agrees, sustaining the Board’s reasoning that there was no causal relation between the first head-strike and Duncan’s refusal to remove the hard hat, and Perry’s angry response to the second head-strike. This strained logic cannot be supported.
I would analyze the situation in light of the recognition of precedent that “the requirements of the job and the tolerable limits of conduct in a particular setting must be explored.” Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 231 (1st Cir.1976). I would invite attention to precedent concerning the role of intent in asserted retaliation and intimidation in OSHA violations, for although “bad intent” has not been directly charged, Mr. Duncan has raised charges of hostile work environment. The requirement of intent as an element of retaliation has support in precedent; for example, In Reich v. Hoy Shoe Co., 32 F.3d 361, 367-68 (8th Cir.1994) the court inferred bad intent when a motive to retaliate was shown. The better approach to this appeal is to consider the entirety of the facts, the applicable law, and the Board’s application of the Congressional Accountability Act, in accordance with congressional intent. I must, respectfully, dissent from the perfunctory treatment of the issues raised by Mr. Duncan on this appeal.