/FILE\
IN CLERKS OFFICE\
SUPREME COURT, STATE OF WASHINGTON\
DATE NOV 2 9 2018\
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Nov 29, 2018

SUSAN L. CARLSON\
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAWN CORNWELL, | ) | No. 94846-1 |
| | ) | |
| Petitioner, | ) | En Banc |
| | ) | |
| v. | ) | |
| | ) | Filed NOV 2 9 2018 |
| MICROSOFT CORPORATION, | ) | |
| A Delaware Corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

WIGGINS, J.—Dawn Cornwell asks us to reverse the grant of summary judgment in her retaliation claim against her former employer, Microsoft Corporation. At issue is whether she presented enough evidence to show that her supervisors had sufficient knowledge that she had taken a protected action under the Washington Law Against Discrimination (WLAD), RCW 49.60.030. Without establishing this knowledge, Cornwell cannot demonstrate a potential causal link between the adverse employment action taken against her and her protected activity. We hold that Cornwell presented sufficient evidence to survive summary judgment on the issues of knowledge and causation. The evidence tends to show that both of Cornwell's

supervisors had actual knowledge that Cornwell had previously engaged in protected activity before they subjected her to adverse employment action. As a result, we reverse the Court of Appeals and remand the case to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

### I. Factual History

While working for Microsoft, Cornwell believed that her then-supervisor was discriminating against her on the basis of sex, engaging in romantic favoritism, and taking retaliatory action against her. She hired an attorney and settled the case with Microsoft. The settlement was confidential, and Cornwell was no longer required to work under her then-manager, Todd Parsons.

Seven years later, Cornwell's new manager, Mary Anne Blake, asked Cornwell to mentor under another Microsoft employee. After learning that the employee reported to Parsons, Cornwell told Blake that she could not mentor under the employee. Blake asked Cornwell why, and Cornwell responded that it was because she had filed a "lawsuit"[1] against Microsoft and could not report to Parsons. Cornwell also told Blake that the suit involved a review score issue and was confidential. Blake sought more information about the lawsuit from human resources and her direct supervisor, Nicole McKinley. Human resources did not have any information on file about the lawsuit and promised to follow up on the issue.

---

[1] Cornwell and Blake referred to Cornwell's previous legal action against Microsoft as a "lawsuit." We refer to that activity using the same terminology.

Meanwhile, Blake told Cornwell that she had inquired about the lawsuit with human resources but that they did not have any further information. She also asked Cornwell what would happen if her team needed to merge with Parsons' team. Cornwell informed Blake that she was unable to discuss the lawsuit further because of the confidentiality agreement and expressed dissatisfaction that Blake had contacted human resources about the matter.

Shortly after Cornwell told her about the suit, Blake conducted a mandatory performance review of Cornwell. During that year, Cornwell had received positive reviews from her peers:

> Dawn is [a] strong release manager able to pull all appropriate stakeholders together, drive meetings forward and succinctly, keep topics on point, and hold people to meeting deliverables.
>
> . . . .
>
> . . . Dawn knows what me [sic] and my team need to be successful and she provides those resources proactively in a timely manner. I never have to wonder where a project stands when Dawn is leading the effort.
>
> . . . .
>
> . . . She actively solicits feedback, is very receptive to any feedback received and also follows up on it.
>
> . . . .
>
> . . . Dawn partners extremely well with others and has established a rapport and positive reputation with the many teams she works with.

Clerk's Papers (CP) at 163-64. During her previous years working for Microsoft, Cornwell also had received good performance ratings and promotions. Despite this positive employment history, Blake informed Cornwell that she was trending toward a

3

rating of "4," the second lowest possible score. Cornwell told Blake that she disagreed with that rating and was upset with this information. Blake followed up with human resources and McKinley about Cornwell's response. Human resources promised to have Microsoft's legal department review Cornwell's performance rating.

Ultimately, Blake and McKinley recommended that Cornwell be rated "5," the lowest possible score. Other managers disagreed with the rating, believing that Cornwell was a higher performer. One manager did not have the "impression that Ms. Blake was giving Ms. Cornwell a fair chance to succeed" and "didn't agree with her [Blake's] assessment of [Cornwell's] performance." CP at 202. Another manager involved in the performance rating process recalled being "very surprised as to how [Cornwell] was evaluated" and that "several of the managers in the discussion supported [Cornwell] as being a good performer, undeserving of a '5' rating definition." CP at 212. Even Blake acknowledged that "in general Dawn received feedback that she's a good team player. People found her personality to be enjoyable, and she brought a positive and upbeat experience to teams." CP at 56.

Despite these disagreements, McKinley said that she and Blake would "take the conversation 'off-line,'" meaning that Blake and McKinley would make the final decision about Cornwell's performance rating without the involvement of the other managers. CP at 212. Cornwell's final performance rating was assessed as a "5"— the lowest possible score. Human resources told Blake to not inform Cornwell of her review score "unless she asked about it." CP at 63. Cornwell was then laid off as part of a larger reduction in force. Cornwell remembers being told that she would not

receive a review score rating because of the layoff. As a result, Cornwell did not learn about her low score until several years later when she was told that she could not be rehired at Microsoft because her final performance rating was so poor.[2]

II. Procedural History

Based on these events, Cornwell filed suit against Microsoft, alleging retaliation in violation of WLAD. Microsoft moved for summary judgment, arguing that Cornwell had failed to present evidence showing a prima facie case of discrimination. The trial court granted Microsoft's motion for summary judgment because the judge believed that "there isn't evidence that Ms. Blake, who gave [Cornwell] the bad [review] score, knew that there was a complaint under WLAD." Report of Proceedings at 40. As a result, the judge believed that Cornwell had failed to show a causal link between the adverse employment action taken against her and her prior lawsuit against Microsoft.

Cornwell appealed the trial court's ruling to the Court of Appeals. The Court of Appeals affirmed the grant of summary judgment in an unpublished opinion. *Cornwell v. Microsoft Corp.*, No. 74919-6-I, slip op. at 1-2 (Wash. Ct. App. June 5, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/749196.pdf. The court agreed that Cornwell had failed to present evidence to prove causation between her prior lawsuit and the adverse employment actions taken against her. *Id.* at 9. But it declined to address whether Cornwell's prior lawsuit was "protected activity" under WLAD. *Id.* The court also declined to adopt Cornwell's proposed standards of review for the claim. *Id.* at 13.

---

[2] After she was terminated, Cornwell applied for 170 different positions at Microsoft.

Cornwell appealed the Court of Appeals' adverse decision to this court, and we accepted review of all issues.

## STANDARD OF REVIEW

"We review a trial court's grant of summary judgment de novo." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "[B]ecause of the difficulty of proving a discriminatory motivation," *id.* at 445, "[s]ummary judgment for an employer is seldom appropriate" in the employment discrimination context, *Mikkelsen v. Public Utility District No. 1 of Kittitas County*, 189 Wn.2d 516, 527, 404 P.3d 464 (2017). We must also "consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party." *Scrivener*, 181 Wn.2d at 444.

## ANALYSIS

We reverse the Court of Appeals. Cornwell has presented sufficient evidence to make a prima facie case that Microsoft retaliated against her in violation of WLAD. This evidence was adequate to create an issue of fact about whether there was a causal link between her prior suit and Microsoft's decision to give her a poor review rating and terminate her. Under either the "actual knowledge" standard or the "knew or suspected" standard, Cornwell presented sufficient evidence of the employer knowledge necessary to show causation. Ultimately, summary judgment was improper, and we remand the case to the trial court for further proceedings.

I. Retaliation under WLAD

WLAD proscribes discrimination in employment on the basis of sex, race, sexual orientation, and other protected characteristics. RCW 49.60.030. WLAD also prohibits employers from retaliating against employees who oppose discriminatory practices. RCW 49.60.210(1). To further these purposes, the legislature has directed us to liberally construe the provisions of WLAD. RCW 49.60.020.

When evaluating the merits of cases brought under WLAD, we employ the *McDonnell Douglas*[3] "evidentiary burden-shifting" framework. *Mikkelsen*, 189 Wn.2d at 526. This framework involves three steps, but we are concerned with only the first step in this case—the plaintiff's burden to establish a prima facie case of discrimination. *Scrivener*, 181 Wn.2d at 446. "'Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive.'" *Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wn.2d 46, 69, 821 P.2d 18 (1991) (quoting 1 Lex K. Larson, Unjust Dismissal § 6.05[5], at 6–51 (1988)); *see also Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 746-47, 332 P.3d 1006 (2014) ("'Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose.'" (internal quotation marks omitted) (quoting *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 799, 120 P.3d 579 (2005))).

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

7

To establish a prima facie case of retaliation, an employee must show three things: (1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link between the employee's protected activity and the adverse employment action. *Currier*, 182 Wn. App. at 742; *see also Wilmot*, 118 Wn.2d at 68 (establishing the retaliation test in the worker's compensation context).

Here, Microsoft alleges that Cornwell has failed to produce sufficient evidence for the first and third elements of her prima facie case.[4] Because the Court of Appeals declined to address whether Cornwell's lawsuit against Microsoft was a protected activity, and because the parties did not brief the issue to us, we do not reach that issue on appeal.[5] We instead address only whether Cornwell presented sufficient evidence to show a potential causal link between her performance rating score, her termination, and her prior lawsuit.

## II. Causation

Microsoft argues that Cornwell failed to present sufficient evidence to create an issue of material fact that there is a causal link between her prior lawsuit and the adverse employment action taken against her. We disagree for the following reasons.

---

[4] The second element of the prima facie test is not at issue. It is undisputed that Cornwell received a poor performance evaluation rating and was terminated. CP at 144-45. The poor rating prevented Cornwell from being considered for future rehiring. CP at 219-20. This undoubtedly qualifies as an adverse employment action. *See Jin Zhu v. N. Cent. Educ. Serv. Dist.—ESD 171*, 189 Wn.2d 607, 619, 404 P.3d 504 (2017) ("'An employment action is adverse if it is harmful to the point that it would dissuade a reasonable employee from making complaints of . . . retaliation.'" (internal quotation marks omitted) (quoting *Boyd v. State*, 187 Wn. App. 1, 15, 349 P.3d 864 (2015))).

[5] Because the issue is not before us, for purposes of this appeal we assume that Cornwell's prior legal action against Microsoft constituted protected activity under WLAD.

An employee proves causation "by showing that retaliation was a substantial factor motivating the adverse employment decision." *Allison v. Hous. Auth.*, 118 Wn.2d 79, 96, 821 P.2d 34 (1991). At the summary judgment stage, the plaintiff's burden is one of production, not persuasion. *Scrivener*, 181 Wn.2d at 445. Thus, to avoid summary judgment on causation, the employee must show *only* that a reasonable jury could find that retaliation was a substantial factor in the adverse employment decision. *Id.* Employees may rely on the following facts to show this: (1) the employee took a protected action, (2) *the employer had knowledge of the action*, and (3) the employee was subjected to an adverse employment action. *Wilmot*, 118 Wn.2d at 69.

At issue here is the quantum of employer knowledge about the employee's prior protected activity. We have yet to address this question in a case. The parties advocate for three different standards to evaluate employer knowledge. Microsoft urges us to adopt the actual knowledge standard used by the Court of Appeals and several federal courts, while Cornwell advocates for either a "knew or suspected" standard or a "general corporate knowledge" standard used by other federal courts.

Here, under either the actual knowledge standard or the "knew or suspected" standard, Cornwell presented enough evidence to survive summary judgment. We decline to address the "general corporate knowledge" standard in this case.[6]

---

[6] Cornwell asks us to adopt the "general corporate knowledge" standard, which requires a plaintiff to show that the employer generally had knowledge of the plaintiff's protected activity. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). Under this standard, the jury can still find retaliation in circumstances where the particular decision-maker denies actual knowledge of the plaintiff's protected activities, "so long as . . . the jury

### a. Actual Knowledge

Cornwell has presented sufficient evidence to survive summary judgment under the actual knowledge standard.

Both the Court of Appeals and several federal courts require that the employer have *actual knowledge* of the employee's protected action in order to prove causation. *See, e.g., Marin v. King County*, 194 Wn. App. 795, 813, 378 P.3d 203, *review denied*, 186 Wn.2d 1028, 385 P.3d 124 (2016) ("Marin failed to show that anyone . . . knew about his protected activity . . . , precluding his claim that employees . . . retaliated for that activity. He identifies no evidence that supports his bare assertion that the entire 'chain of command' knew [about his protected activity].'"); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.").[7] Because retaliation is an

---

concludes that an agent is acting explicitly or implicit[ly] upon the orders of a superior who has the requisite knowledge." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). While the standard may be useful in situations where many individuals act collectively in a large company, it is not applicable here where Cornwell's two supervisors had actual knowledge of her prior lawsuit. Thus, we decline to address the "general corporate knowledge" standard in this case.

[7] *See also Michkowski v. Snohomish County*, No. 71328-1-I, slip op. at 14 (Wash. Ct. App. Feb. 17, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/713281.pdf ("Without evidence of actual knowledge, [an employee] fails to establish the causal connection necessary to make out a prima facie case of retaliatory discharge."); *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) ("Clearly, a superior cannot retaliate against an employee for a protected activity about which he has no knowledge."); *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity.").

intentional act, an employer cannot retaliate against an employee for an action of which the employer is unaware. *Marin*, 194 Wn. App. at 818 ("WLAD does not prohibit an employer's actions without evidence of a causal link between the action and a plaintiff's protected activity.").

Microsoft argues that Blake and McKinley did not have actual knowledge of Cornwell's suit because they did not know the specific nature of the lawsuit—i.e., that it involved an allegation of discrimination in violation of WLAD. CP at 55, 144. However, Microsoft's focus on the managers' knowledge about the *substance* of the suit is misplaced. A decision-maker need not have actual knowledge about the legal significance of a protected action. Instead, the decision-maker need have actual knowledge only that the employee *took the action* in order to prove a causal connection. RCW 49.60.210(1) ("It is an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by [WLAD]."); *see also Wilmot*, 118 Wn.2d at 69 (stating that an employee could prove causation by showing three facts, including "that the employer had knowledge of the [action]"). "The proper inquiry is whether the . . . evidence suggests *a causal connection* between the protected activity and the subsequent adverse action sufficient to defeat summary judgment." *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 367 (8th Cir. 1994). Cornwell has presented sufficient evidence that Blake and McKinley knew Cornwell took prior legal action against Microsoft.

Here, Blake and McKinley actually knew about Cornwell's alleged protected activity—the lawsuit. Regardless of whether they understood that the lawsuit was protected activity under WLAD because of its substance, they still had knowledge that the activity took place. It is undisputed that Blake and McKinley knew that Cornwell had filed a lawsuit against Microsoft and her former supervisor. Blake learned that Cornwell could not discuss the details of the lawsuit, but knew that the suit involved a review score and male supervisor. Blake also knew that Cornwell "had a legal action with Microsoft about a review score." CP at 55. Blake then followed up with human resources about Cornwell's lawsuit with Microsoft. [8]

Given Blake and McKinley's knowledge of the suit and the poor performance rating and termination that followed shortly thereafter,[9] it is a reasonable inference that these actions were in retaliation for Cornwell's previous lawsuit. *See Raad*, 323 F.3d at 1197 ("'That an employer's actions were caused by an employee's engagement in protected activities may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision.'" (internal quotation marks omitted) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000)); *see also Wilmot*, 118 Wn.2d at 69 (stating, "'[p]roximity in time between the

---

[8] Contrary to the dissent's criticisms, it is because of all of the facts here discussed, not merely because Cornwell's prior suit involved a male supervisor, that her claim survives summary judgment. Dissent at 2. Further, also despite the dissent's assertions, we *know* that Cornwell's prior suit related to sex discrimination; we do not make (or need to make) the "over-inclusive" assumption that all suits by a female employee against a male supervisor involve sex discrimination. Accordingly, the dissent's list of hypothetical claims that might have been brought is surplusage. *Id.* at 2-5.

[9] Cornwell told Blake about the lawsuit in late 2011. In July 2012, Blake and McKinley rated Cornwell as a "5," and Cornwell was laid off in September 2012.

claim and the firing is a typical beginning point'" for proving retaliation (quoting 1 LARSON, *supra*, § 6.05[5], at 6–51)).[10] In addition, Cornwell had previously received positive ratings and promotions during her employment at Microsoft. In the year that she was terminated, "several" other managers disagreed with Blake's decision to rate Cornwell poorly and thought that she should be rated higher based on her performance. Again, McKinley and Blake knew about Cornwell's prior legal action, and the circumstantial evidence supports the reasonable inference that Blake's knowledge of Cornwell's lawsuit was a substantial factor in her poor rating and eventual termination. That is all that is required to survive summary judgment. As a result, Cornwell presented the necessary circumstantial evidence to show that her lawsuit was a substantial motivating factor in her poor performance rating and termination under the actual knowledge standard.

### b. Knew or Suspected

Cornwell also asks us to adopt a "knew or suspected" standard for evaluating retaliation claims. The "knew or suspected" standard incorporates the actual knowledge standard and also encompasses cases in which the employer suspects

---

[10] Microsoft argues that Cornwell lacks evidence of proximity because she filed her prior lawsuit seven years before her poor evaluation and termination. However, this argument focuses on the wrong event. Here, Blake and McKinley learned about Cornwell's previous lawsuit only months before Cornwell was terminated. To properly evaluate whether there is sufficient circumstantial evidence of retaliation, we must focus on the proximity between when Blake and McKinley learned of the lawsuit and the adverse employment actions that they subsequently took. The time between those events is a few months—brief enough to give rise to a reasonable inference of retaliatory motive.

that an employee engaged in protected action.[11] It requires sufficient evidence to reasonably infer "both that [a supervisor] either knew or suspected" that an employee took a protected action "and that there was a causal connection between this knowledge or suspicion and [the employee's] termination." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003). This standard applies, for example, when a supervisor has actual knowledge that a complaint was made but has only a suspicion regarding who made the complaint and subsequently takes an adverse employment action based on that suspicion.

In *Hernandez*, the Ninth Circuit court held that a supervisor's suspicion that a particular employee was the one who filed a sexual harassment report was enough to survive summary judgment after the supervisor fired the suspected employee. *Id.* In that case, an employee learned that his coworker was allegedly harassed by a supervisor. *Id.* at 1110. Because his coworker was afraid to report the harassment, the employee reported it to the human resources department. *Id.* Shortly thereafter, the supervisor fired the employee. *Id.* at 1111. After the employee sued for retaliation, the supervisor denied that he knew which employee reported him for harassment and stated that the employee's termination was for cause. *Id.* at 1113. The trial court granted summary judgment in favor of the employer on this basis. *Id.*

---

[11] The "knew or suspected" standard has been applied by the United States Court of Appeals, Ninth Circuit, as well as by other federal courts in the OSHA context. *See, e.g., Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107 (9th Cir. 2003); *Reich*, 32 F.3d 361.

The Ninth Circuit reversed summary judgment, holding that the employee had presented "sufficient evidence from which a reasonable jury could infer both that [the supervisor] either knew or suspected that [the employee] had reported the alleged harassment to [human resources], and that there was a causal connection between this knowledge or suspicion and [the employee's] termination." *Id.* The court reasoned that "[i]t is frequently impossible for a plaintiff in [the employee's] position to discover direct evidence contradicting someone's contention that he did not know something." *Id.* at 1114. Thus, "[w]hat-did-he-know-and-when-did-he-know-it questions are often difficult to answer, and for that reason are often inappropriate for resolution on summary judgment. . . . But [the employee] has introduced substantial circumstantial evidence. . . . He has produced sufficient evidence which, if credited by the jury, would satisfy [the] burden of establishing a prima facie case." *Id.* at 1113-14. So long as an employee produces evidence from which a reasonable jury could infer that retaliation had taken place, this is sufficient to survive summary judgment. *Id.* at 1114. And while, a jury could believe the supervisor's version of events rather than the employee's, the jury must be permitted to consider and weigh evidence. *Id.*

Here, Cornwell had to prove that Microsoft knew or suspected that she had taken a prior legal action. As previously discussed, Cornwell produced sufficient evidence showing that both Blake and McKinley had actual knowledge that Cornwell had filed a previous lawsuit against Microsoft. Thus, Cornwell easily meets the "knew or suspected" standard to survive summary judgment on her retaliation claim.

15

Although Cornwell satisfies the "knew or suspected" standard, the broader

question remains of whether we should adopt this standard. We adopt the standard

because it furthers WLAD's purpose to protect employees from retaliation.

The purpose behind the "knew or suspected" test is to protect employees from

retaliation to the fullest extent possible:

> It seems clear to this Court that an employer that retaliates against an employee because of the employer's *suspicion* or *belief* that the employee filed a[ ] . . . complaint has as surely committed a violation of [the statute] as an employer that fires an employee because the employer *knows* that the employee filed a[ ] . . . complaint. Such construction most definitely furthers the purposes of the Act generally and the anti-retaliation provision specifically.

*Reich*, 32 F.3d at 368. "It is well recognized that WLAD . . . relies heavily on private

individuals for its enforcement. This reliance would be unrealistic, to say the least, 'if

this court does not provide them some measure of protection against retaliation.'" *Jin*

*Zhu v. N. Cen. Educ. Serv. Dist.—ESD 171*, 189 Wn.2d 607, 622-23, 404 P.3d 504

(2017) (citation omitted) (quoting *Allison*, 118 Wn.2d at 94). Restricting the application

of WLAD's antiretaliation provisions to instances of actual knowledge results in

inconsistent protection of employees:

> It would be a strange rule, indeed, that would protect an employee discharged because the employer actually *knew* he or she had engaged in protected activity but would not protect an employee discharged because the employer merely *believed* or *suspected* he or she had engaged in protected activity.

*Reich*, 32 F.3d at 368. Employers are not limited to retaliation decisions based on

information they actually know to be true. *Id.* Instead, "common sense and experience

establish that employers also make employment decisions on what they suspect or believe to be true." *Id.*

Thus, construing WLAD "to protect employees from adverse employment actions because they are *suspected* of having engaged in protected activity is consistent with the general purposes of the Act and the specific purposes of the anti-retaliation provisions." *Id.* (emphasis added); *see also Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576, 583, 397 P.3d 120 (2017) (recognizing that because a policy "ultimately provides greater protection for workers, it is more in tune with other Washington case law addressing employee rights"). As a result, as long as an employee presents evidence "suggest[ing] a *causal connection* between the protected activity and the subsequent adverse action sufficient to defeat summary judgment," that employee has made a prima facie case of retaliation under WLAD. *Reich*, 32 F.3d at 367.

Microsoft and amici curiae the Association of Washington Business and the Chamber of Commerce of the United States of America contest adoption of the "knew or suspected" standard. They argue that adopting the standard leads to strict liability for employers, eliminates the causation element of a retaliation prima facie case, and invites speculation into the summary judgment phase. Of these arguments, none is persuasive.

The "knew or suspected" test does not lead to strict liability or eliminate the requirement that a retaliation be intentional. Instead, the test eliminates the right of employers to intentionally retaliate against employees that they *suspect* but do not

17

actually know to have taken protected action. An employee must still produce sufficient evidence that his or her protected activity was a substantial factor in the employer's decision to take adverse action against the employee. *Allison*, 118 Wn.2d at 96.

In addition, the standard requires the production of *evidence*; mere speculation will not suffice to defeat summary judgment. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) ("The 'facts' required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature. Ultimate facts or conclusions are insufficient. Likewise, conclusory statements of fact will not suffice." (citation omitted)). "It is frequently impossible for a plaintiff . . . to discover direct evidence contradicting someone's contention that he did not know something." *Hernandez*, 343 F.3d at 1114. Instead, as long as "[a] reasonable jury could infer from [a plaintiff's] evidence" that the plaintiff's protected activity was a substantial factor in the adverse employment decision, that plaintiff has satisfied his or her burden of establishing a prima facie case of retaliation. *Id.*

For these reasons, we adopt the "knew or suspected" standard because it furthers WLAD's purpose of protecting employees from retaliation.

## CONCLUSION

In conclusion, we reverse the Court of Appeals. We adopt the "knew or suspected" standard and hold that Cornwell presented sufficient evidence to create a dispute of fact about whether there was a causal link between her poor performance rating and termination and the previous lawsuit she filed against Microsoft. Both Blake

and McKinley had actual knowledge that Cornwell filed the prior lawsuit against Microsoft. Shortly after learning this, and over the objection of other managers, they gave Cornwell the lowest possible review rating, and Cornwell was laid off. In light of this evidence, the trial court erroneously granted summary judgment to Microsoft. We reverse and remand the case to the trial court for further proceedings consistent with this opinion.

Wiggins, J.

WE CONCUR.

Fairhurst, C.J.

Stephens, J.

González, J.

Madsen, J.

Owens, J.

Yu, J.

No. 94846-1

GORDON McCLOUD, J. (dissenting)—I agree with the majority's main conclusion that a plaintiff can show retaliatory discharge in violation of the Washington Law Against Discrimination (WLAD), RCW 49.60.030, without showing that the employer had actual knowledge of the plaintiff's prior protected activity. A plaintiff's showing that the employer suspected that the plaintiff had previously engaged in WLAD-protected activity is enough to establish the causation requirement of a WLAD retaliatory discharge claim. Majority at 13-16.

But I disagree with the majority's application of that legal standard to the facts of this case. The majority identifies nothing in the record showing that Dawn Cornwell's current supervisors knew or suspected that her prior lawsuit involved the WLAD-prohibited activity of sex discrimination.

I say that because the majority holds that the following facts, alone, suffice to satisfy the knowledge or suspicion element of WLAD causation: (1) Cornwell's supervisors knew that she had previously brought a lawsuit against

1

Microsoft Corporation[1], (2) those supervisors knew that the lawsuit had involved a male supervisor, and (3) those supervisors knew that the lawsuit had involved a review score. *Id.* at 2. Indeed, the majority accepts Microsoft's assertion that Cornwell's supervisors "did *not* know the specific nature of the lawsuit—i.e., that it involved an allegation of discrimination in violation of WLAD." *Id.* at 11 (emphasis added). Thus, the majority ends up holding that because Cornwell's supervisor knew that her prior lawsuit had "involved a review score and *male* supervisor," her present claim was entitled to survive Microsoft's motion for summary judgment. *Id.* at 12 (emphasis added).

I disagree. That analysis creates a standard that is both significantly over-inclusive in certain respects and significantly under-inclusive in other respects.

The majority's analysis is over-inclusive because it assumes that a female employee's lawsuit about a male supervisor and a review score could not have alleged anything but sex discrimination. But that is incorrect. A female employee could bring a lawsuit related to her review score and her male supervisor that sounds in tort. Depending on the explanation that the male supervisor provided for the review score that he gave his female employee, such a lawsuit might advance

---

[1] Like the majority, I use the parties' terminology. *See* majority at 2 n.1.

claims for negligent infliction of emotional distress, intentional infliction of emotional distress, or defamation.

Besides common law torts, such a lawsuit could allege any number of statutory retaliation claims that do not implicate the WLAD. For example, a male supervisor could give a female employee a poor review score because she submitted a safety complaint, in violation of RCW 49.17.160. Or a male supervisor might give a female employee a poor review score because she told her coworkers that she thinks they should form a union, in violation of 29 U.S.C. § 158(a)(3). A male supervisor could give a female employee a poor review score because he thought that she was insufficiently committed to the company after she spent two weeks serving on a jury trial—in violation of RCW 2.36.165(2). As yet another example, a male supervisor might give a female employee a poor review score because she blew the whistle under the Sarbanes-Oxley Act of 2002, an 18 U.S.C. § 1514A violation. Or a male supervisor could give a female employee a poor review score because she refused to disclose her login information to her personal social networking account, access her personal social networking account in the supervisor's presence, add a contact of the supervisor's selection to her personal social networking account, or alter the view settings of her personal social networking account—all in violation of RCW 49.44.200(1)(e). A female

3

employee's refusal to take a 23andMe DNA (deoxyribonucleic acid) test, even though everybody else in the department was doing so and thought that looking at the results was great fun, might also generate a poor review score from a male supervisor, violating 42 U.S.C. § 2000ff-1(b). A male supervisor might also give a female employee a poor review score because she declined to support the company's—or her supervisor's—preferred candidate or political party, implicating RCW 42.17A.495(2). A male supervisor could also give a female employee a poor review score because he thought that her invocation of federal bankruptcy protections in her personal life made her unreliable and untrustworthy, in violation of 11 U.S.C. § 525(b). Annoyed at the increased paper work in his life, a male supervisor could also give a female employee a poor review score because she filed a workers' compensation claim—running afoul of RCW 51.48.025(1). Likewise, a male supervisor might give a female employee a poor review score because she took action to stop her employer from defrauding the federal government, implicating 31 U.S.C. § 3730(h)(1).

All of these supervisory actions would be illegal—but none would violate the WLAD. They would violate other statutes. For this reason, the majority's conclusion that a female employee's review-score lawsuit against a male employer must have been gender-based is impermissibly overbroad. It includes

4

within the WLAD's scope even claims in which the employee fails to show that the employer knew or suspected that the employee engaged in *WLAD*-protected activity.

The majority justifies its analysis by asserting that the supervisors' "knowledge about the *substance* of the suit is" immaterial. Majority at 11. According to the majority, "the decision-maker need have actual knowledge only that the employee *took the action* in order to prove a causal connection." *Id.* The majority cites *Wilmot v. Kaiser Aluminum and Chemical Corp.* for that proposition. *Id.*; *see* 118 Wn.2d 46, 69, 821 P.2d 18 (1991). But that is not what *Wilmot* held. *Wilmot* involved claims for wrongful termination in violation of public policy. 118 Wn.2d at 51-52. The plaintiffs alleged that their employers fired them because they had filed workers' compensation claims. *Id.* We held "that a plaintiff may establish the required case by showing that the worker filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged." *Id.* at 69. But that "knowledge of the claim" language was a reference to the fact that in *Wilmot,* the substance of the claims—that is, that they were workers' compensation claims—was well known to the employers when they fired the employees. *Id.* at 51; *Moran v. Wash. Fruit & Produce*, 60 Wn. App. 548, 550, 804 P.2d 1287 (1991), *rev'd by Wilmot*, 118 Wn.2d at 79. *Wilmot* did not involve a

5

mysterious prior claim that inspired "detective work," as this case does. Clerk's Papers at 156. Moreover, *Wilmot* concluded that a plaintiff must show that at least part of the employer's "*motivation* for the discharge was the employee's exercise of or intent to exercise the statutory rights." 118 Wn.2d at 68-69 (emphasis added); *see also id.* at 67 (requiring a showing of the employer's "'motivat[ion]'" (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984))). Here, contrary to the WLAD and contrary to *Wilmot*, the majority discards the requirement that knowledge or suspicion of *WLAD*-protected activity was a substantial factor in the adverse employment action. Once again, the majority's analysis is over-inclusive.

But the majority's approach is also under-inclusive in a different respect. There is no doubt that the history of gender discrimination in the workplace is basically a history of gender discrimination against women. *See generally Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 286, 107 S. Ct. 683, 93 L. Ed. 2d 613 (1987) (purpose of antidiscrimination legislation at issue was to "provide relief for working women and to end discrimination against pregnant workers"); *Muller v. Oregon*, 208 U.S. 412, 28 S. Ct. 324, 52 L. Ed. 551 (1908) (detailing and justifying history of limitations on women in the workplace). But there is also no doubt that male supervisors can violate their male employees' rights to be free of

sex discrimination in the workplace and so too can female supervisors vis-à-vis female or male employees. *See, e.g., Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (sex discrimination includes sexual harassment by male supervisor against male employee); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001) (male coworkers' type of verbal abuse of male employee constituted sexual harassment). I fear that the majority's standard fails to take account of those discrimination claims.

In sum, the majority has not identified any facts showing that the supervisors in this case knew or suspected that Cornwell previously engaged in WLAD-protected activity. For that reason, I respectfully dissent.