IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FARIDEH EMAMI, | ) | No. 77624-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SEATTLE SCHOOL DISTRICT, dba | ) | |
| SEATTLE PUBLIC SCHOOLS, a political | ) | |
| subdivision of the State of Washington, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 25, 2019 |
| | ) | |

ANDRUS, J. — Farideh Emami appeals the summary judgment dismissal of her retaliation claim against the Seattle School District (the District). The trial court dismissed Emami's claim on summary judgment before the Supreme Court issued its decision in Cornwell v. Microsoft Corp., __ Wn.2d __, 430 P.3d 229 (2018). Because there are genuine issues of material fact whether Emami was denied full time employment because the District suspected she had engaged in protected activity, we reverse and remand.

## FACTS

Emami was a teacher for the District from 1999 until 2005. Emami worked at Martin Luther King, Jr. Elementary School from 1999 until 2004 and moved to Dunlap Elementary School for the 2004-05 school year. On September 26, 2005, Emami was injured on the job and placed on disability until June 13, 2006. Emami

was unable to return for the 2006-07 school year due to her injuries, so the District put her on leave without pay.

Emami filled out a Section 504 Request for Accommodations under the federal Rehabilitation Act of 1973 for the 2007-08 school year. The District offered Emami a position at Kimball Elementary School on June 22, 2007, but Emami claims that when she submitted her Section 504 request to the school principal, she was told the school could not accommodate her. Emami alleges she told the District about the principal's failure to accommodate her and that she could not accept the placement. The District terminated Emami's employment, effective August 29, 2007. The District contended it did so when Emami failed to appear on the first day of the 2007-08 school year.

Emami claims that between 2008 and 2013, she sought a full-time teaching position with the District on multiple occasions. The District did not offer her a permanent position during that time. Emami negotiated directly with the District's General Counsel, Fay Chess-Prentice, who offered Emami a 0.50 full-time equivalent (FTE)[1] certificated teaching position in January 2009. Emami rejected Chess-Prentice's offer, instead asking for either a full-time position in a school within 45 minutes of her home or two part-time positions in two different schools. In response to Emami's counteroffer, Chess-Prentice withdrew the District's offer.

Emami hired attorney Daniel DeLue to negotiate on her behalf for a position in the District with her requested accommodations. The parties attempted to settle

---

[1] A 0.5 FTE basic education certified instructor is one that is either contracted to work 180 partial days during the school year or fewer than 180 full days during the school year. WAC 392-121-215(2)-(3).

but were unable to reach a resolution. DeLue then sent an Administrative Claim for Damages to the District on April 21, 2009. The District rejected Emami's claim.

Emami hired another lawyer, Farjam Majd, in 2010, to re-open negotiations with the District. On January 15, 2010, the District sent Majd a letter again rejecting Emami's claim for damages, asserting that it had made numerous offers of accommodation. It denied failing to accommodate Emami or wrongfully terminating her employment. On February 3, 2010, Majd sent a demand letter to the District. Majd's letter also stated that Emami was no longer in need of special accommodations and would be willing to settle the dispute if the District offered her a full-time teaching position or a school principal position. Again, the parties were unable to reach an agreement.

Emami testified she visited and corresponded with the District's Human Resources (HR) department numerous times between 2010 and 2012. Emami alleged during one visit, she encountered Assistant Superintendent Paul Apostle in the hallway. Apostle was hired by the District in May 2011. Emami claims she told Apostle about her trouble securing a job in the District, and Apostle told her that he would look into it. Apostle did not remember the in-person encounter but testified that in December 2011, Emami called in a complaint about not getting hired and that Apostle looked into the matter.

In January 2012, Emami went to the District's HR department to review her personnel file, which she claims did not contain a "do not rehire" designation. On that same day, Emami made an appointment to meet with Denise Williams-Saunders, the District's HR manager. After reviewing Emami's personnel file and electronic records, Williams-Saunders told Emami that there was nothing

preventing her from securing a job with the District. That same month, Emami met with Employment Services Director Dana DeJarnatt, who again told Emami that there was nothing in her personnel records or electronic file preventing her from being hired.

In early 2012, Emami met with Apostle. Apostle told Emami he could not find anything in her personnel file preventing her from securing a full-time teaching job with the District. Apostle did find a letter indicating that Emami had been terminated in 2007 for failing to accept her position at Kimball. Apostle testified that at the time of the 2012 meeting with Emami, he did not know about Emami's threat of a lawsuit against the District in 2009 or 2010. During the meeting, Apostle hired Emami as a substitute teacher for the District. Apostle denies limiting her to substitute positions, but Emami presented evidence that her NEOGOV electronic personnel file, the online application used by the District, indicated she was "only permitted to substitute per employee/labor relations." Emami also presented evidence that before being hired as a substitute teacher for the District in 2012, her NEOGOV electronic record also stated that she was on a "do not rehire" list "per legal."

In August 2013, Emami applied for a full-time certificated third-grade teaching job at Highland Park Elementary School, where Emami regularly worked as a substitute. Emami testified that Highland Park Principal Ben Ostrom interviewed Emami and told her that he wanted to hire her, but there were problems in her personnel file.

Emami asked to meet with Apostle again to discuss employment with the District. On August 22, 2013, Emami called the District in an attempt to set up a

meeting with Apostle, telling Apostle's assistant that Ostrom wanted to hire her. Apostle's assistant relayed the message to Apostle, telling him that Emami had been on the "do not rehire" list before he hired her as a substitute teacher in April 2012. District records indicate that Apostle instructed staff to put Emami's application "on hold" for further screening. Emami claims that shortly thereafter, Ostrom told her he had to hire another applicant due to time constraints.

Emami contacted Temple Robinson, a representative for the Seattle Education Association. Robinson scheduled a meeting with Apostle, which occurred on November 13, 2013. During the November 13, 2013 meeting, Emami claims Apostle told her she was on the "do not rehire" list because "they thought you sued the district" and that it happened in "[Apostle's] pipeline." Apostle also allegedly told Emami her placement on the list was "wrong." Emami testified when she told Apostle she had not sued the District, he replied "Now I know."

Apostle has no recollection of the meeting, denies making those statements to Emami, and claims that he would never have told Emami that the District put her on a "do not rehire" list because the District thought Emami had brought a lawsuit against it.

On January 16, 2014, Emami sent Apostle an e-mail, thanking him for meeting with her and Robinson on November 13, 2013. Emami asked for Apostle's advice for applying for a kindergarten teaching position at Highland Park. Apostle forwarded the e-mail to DeJarnatt, telling her to call Emami on his behalf and encourage her to apply to the position at Highland Park. Apostle also told DeJarnatt that Emami should no longer be on the "do not hire" list. DeJarnatt had a telephone conversation with Emami two days later, on January 18. DeJarnatt

then e-mailed Ostrom, telling him that Emami's record contained an error which had been corrected and that Emami had applied for the open kindergarten teaching position at Highland Park. Ostrom hired Emami as a kindergarten teacher in January 2014.[2]

Emami filed suit against the District on September 12, 2016. She alleged that the District placed her on its "do not rehire" list in retaliation for her having filed a claim for damages in 2009, costing her the August 2013 job opportunity at Highland Park. The trial court first dismissed all claims prior to three years and sixty days, or approximately July 12, 2013, on statute of limitations grounds, but ruled there was a genuine issue of material fact as to the causal link between the failure to be hired in August 2013 and her protected activity. On reconsideration, the trial court dismissed all of Emami's claims, ruling the only evidence linking Emami's protected activity to the August 2013 decision not to hire her was inadmissible hearsay from Apostle. It also reasoned Emami could not establish causation because she could not show that she was placed on the list after 2009, when she filed her administrative claim, instead of in 2007, when she was terminated from the District. Emami appeals the summary judgment order.

## ANALYSIS

This court reviews a trial court's grant of summary judgment de novo. Cornwell v. Microsoft Corp., __ Wn.2d __, 430 P.3d 229, 233 (2018). Because of the difficulty in proving a discriminatory motive, summary judgment for an employer

---

[2] Emami was displaced from Highland Park at the end of the 2014 school year and was placed at Hazel Wolf Elementary for the 2014-15 school year. Her provisional contract was not renewed at the end of the 2015 school year due to an unsatisfactory rating, and she was terminated from the District again. She does not challenge her 2015 termination on appeal.

is seldom appropriate in the employment discrimination context. Id. (citing Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014); Mikkelsen v. Pub. Util. Dist. No.1 of Kittitas County, 189 Wn.2d 516, 527, 404 P.3d 464 (2017)). When considering a motion for summary judgment, we construe all admissible facts and reasonable inferences in the light most favorable to the nonmoving party. Id. Moreover, the de novo standard of review applies to all trial court rulings made in conjunction with a summary judgment motion, including evidentiary rulings. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); see also Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 666, 362 P.3d 1287 (2015).

The Washington Law Against Discrimination (WLAD) prohibits employers from retaliating against employees who oppose discriminatory practices. RCW 49.60.210(1). When evaluating the merits of cases brought under WLAD, we use the three step McDonnell Douglas[3] burden-shifting framework. Cornwell, 430 P.3d at 234. This case, like Cornwell, involves the first step in the case—the plaintiff's burden to establish a prima facie case of discrimination. To establish a prima facie case of retaliation, an employee must show (1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. Id. at 234.

The trial court dismissed Emami's lawsuit before the Supreme Court issued its decision in Cornwell, a case in which the Court adopted a new standard for establishing causation, or "that retaliation was a substantial factor motivating [an]

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

adverse employment decision." Id. at 235 (internal quotation marks omitted) (quoting Allison v. Hous. Auth., 118 Wn.2d 79, 96, 821 P.2d 34 (1991)). First, the Court made clear "[a]t the summary judgment stage, the plaintiff's burden is one of production, not persuasion." Id. Second, the Court held a plaintiff need not produce evidence that the decision-maker for an employer had actual knowledge of her protected activity. It is sufficient to produce evidence to reasonably infer that a supervisor either knew or suspected that an employee had taken protected action and that there was a causal connection between this knowledge or suspicion and the adverse employment action. Id. at 237 (adopting standard set out in Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1110-14 (9th Cir. 2003)).

The District concedes that Emami filed an administrative claim in April 2009 and again in 2010 and that these claims constitute protected activity under the WLAD. The District also admits it denied her employment in August 2013, an adverse employment action. The District disputes, however, Emami's allegation it placed or kept her on a "do not rehire" list because of her participation in any protected activity. District HR manager Elaine Williams testified that when the District terminates an employee, he or she is automatically put on a "do not rehire" list.

Emami does not contest she was initially placed on a "do not rehire" list in 2007. She contends, however, that the evidence suggests either she was removed from this list at some point and then relisted by Apostle after discovering her past claim against the District, or Apostle realized she had erroneously been placed on this list and chose not to remove her after discovering her past claim. Thus, Emami's status between 2010, after Emami filed her administrative claim,

and August 2013, when she was denied the job opportunity at Highland Park, is in dispute.

At oral argument, Emami made clear that her sole claim arises out of the lost job opportunity in August 2013. Emami presented evidence she was on the "do not rehire" list in August 2013. She also clarified that the decision-maker here is Apostle because the evidence indicates he instructed District staff to put Emami's application on hold after she interviewed with Ostrom. Emami contends Apostle knew or suspected, by August 2013, she had previously asserted a WLAD claim against the District. On December 22, 2011, Emami left a voicemail for the District Superintendent, Apostle's boss, stating:

> And I would love to make an appointment with superintendent and speak with her about the situation that I am trying to solve with the school district for about 3 years now. And I need to see her before I do the steps that I don't think will be pleasant for me or for the school district. And I am going public with the information if I don't hear from the superintendent.
>
> . . .
>
> They put me out of work for, after the accident, they never asked me to come back to work and that's the reason I keep calling, and they are ignoring me, and I don't know what is going on. But with the letters and everything I have, I don't think that school district wants the media, public, locally and nationally, know about this.

In January 2012, Apostle listened to this message at the request of District staff and stated "I will follow up. This dismissal occurred in 2007 and there is little background information. I will share other aspects of this case with you on Friday." Emami argues this e-mail is circumstantial evidence Apostle was aware she had threatened to file a "case" against the District.

Emami and Apostle met again shortly after Apostle sent this e-mail. Although Emami admits Apostle hired her as a substitute teacher at that stage, a reasonable jury could infer from notes in her NEOGOV file that Apostle restricted her from obtaining full time employment. Apostle denies limiting her to substitute positions, but Emami presented e-mails dated April 2013 in which District HR staff discussed Emami's status. One HR analyst wrote:

> Farideh Ozra Emami has been barred from applying for positions in Neogov. The comments states [sic] barred from applying per legal. I'm not sure if you are aware but wanted to bring to your attention that she has been rehired with [the District] as a substitute since April of 2012. It was brought to my attention that she had been working for [the District] because I received two reference letters from [District] employees for the numerous administrative positions she has recently applied to. One of the letters stated she filled in for the teacher during her absence.

Further e-mails within the HR department confirm Emami had been on the "do not rehire [list] per legal, but that [Apostle] rehired her."

Emami also presented e-mails from August 2013 in which a District HR administrative assistant, Patricia Stambor, informed Apostle that notes in Emami's NEOGOV electronic file, "show that she is only permitted to substitute per employee/labor relations." Stambor reminded Apostle he had "met with [Emami] a few times in the past. She was on the do not hire list and then you told her she could substitute." CP 246.

In response to this e-mail exchange, Apostle asked Stambor to "[p]lease hold on this hire until next week." He informed several members of the HR staff that "I can provide additional information on this applicant for a follow up meeting with the principal next week." He asked Stambor to "inform the analyst in charge that we need to hold the hire until additional screening is completed." The principal

mentioned in this e-mail is arguably Ostrom, the individual with whom Emami interviewed for a teaching position. Emami contends a jury could reasonably find from this e-mail exchange that Apostle spoke with Ostrom who then told Emami he could not hire her because there was some problem with her personnel file and he could not wait any longer to fill the open position.

Finally, Emami testified that in November 2013, she again met with Apostle to question him as to why the District would not hire her. Emami stated Apostle told her "they" put Emami on the "do not rehire" list because "they" thought she had sued the District. She also testified Apostle stated "it happened in [Apostle's] pipeline." Emami stated when she told Apostle she had not in fact sued in 2009, he replied, "Now I know."

Emami contends that Apostle's statements are either direct evidence the District actually knew, or circumstantial evidence that Apostle knew or suspected, she had engaged in protected activity. The trial court excluded Apostle's statement about what unidentified District personnel told him as inadmissible hearsay under ER 801. We agree evidence submitted in opposition to summary judgment must be admissible, and hearsay evidence does not suffice to defeat summary judgment. SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). We agree with the trial court that Apostle's alleged statement about what "they" thought is inadmissible under ER 801(c) if offered for the truth of the matter asserted.

However, the evidence is not hearsay if offered for the non-hearsay purpose of establishing what Apostle suspected in August 2013 when he instructed HR to place Emami's application on hold. After listening to Emami's December 2011 voicemail, Apostle arguably knew or suspected Emami had alleged mistreatment

by the District after sustaining an on-the-job injury. He knew Emami remained on the "do not rehire" list on August 23, 2013, when HR informed him Emami was applying for a full time teaching job with Ostrom. Although there is nothing in the record showing that Apostle and Ostrom communicated directly with one another—either in-person or via e-mail—about the August 2013 position at Highland Park, Emami testified that Ostrom told her he had to hire another candidate because he was running out of time before the new school year started. Additionally, a jury could infer District HR employees informed Ostrom that Emami's application was "on hold" based on the content of Apostle's August 23, 2013 e-mail. The question the evidence raises is: why would Apostle place her application on hold? His statement to Emami in November 2013 that he had received information she had sued the District and subsequently learned she had not done so is circumstantial evidence from which a reasonable jury could conclude Apostle suspected Emami had asserted an administrative claim against the District. An out-of-court statement may be offered to show a person who heard it received notice or had knowledge of some fact. Price v. State, 96 Wn. App. 604, 618, 980 P.2d 302 (1999) (woman's out-of-court statement to DSHS admissible to establish DSHS on notice of mother's drug and alcohol use); see also 5C Karl B. Tegland, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 803.15 (6th ed. 2016) (out-of-court statements commonly admitted to show hearer or reader received notice of some fact or had knowledge of some fact as a result of statement in question).

The District contended at oral argument Apostle placed Emami's application on hold because there was some question as to whether her teaching certificate

remained valid. We cannot find any evidence of this issue in the record before us. Regardless, Apostle's explanation for his decision to place Emami's application on hold presents a question of fact for the jury to decide.

Because a jury could reasonably conclude that Emami was denied a full time teaching position at Highland Park in August 2013 because Apostle suspected she had engaged in protected activity, we reverse the summary judgment dismissal of Emami's retaliation claim.

Emami also appeals the trial court's statute of limitations ruling. We do not need to address that issue because Emami confirmed her sole claim for damages arises out of the District's failure to hire her in August 2013. This claim falls within the three-year statute of limitations and is not time-barred. RCW 4.16.080(2); see also Antonius v. King County, 153 Wn.2d 256, 261-62, 103 P.3d 729 (2004).

Reversed and remanded.

WE CONCUR:

_Andrus, J._