NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 6 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUSTIN BAKER,

        Plaintiff - Appellant,

v.

UNITED PARCEL SERVICE, INC.,

        Defendant - Appellee.

No. 23-4364

D.C. No.
2:21-cv-00162-TOR

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Submitted December 2, 2024[**]
San Francisco, California

Before: BENNETT, BRESS, and FORREST, Circuit Judges.

Justin Baker appeals the district court's grant of summary judgment in favor

of his employer, United Parcel Service, Inc. (UPS), on his claims of retaliation in

violation of the Uniformed Services Employment and Reemployment Rights Act

(USERRA), 38 U.S.C. § 4301 et seq., and the Washington Law Against

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Discrimination (WLAD), Wash. Rev. Code § 49.60.210. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo the district court's grant of summary judgment, viewing the evidence in the light most favorable to Baker, to determine whether there are genuine issues of material fact. *See 3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1321 (9th Cir. 2020).

1. We analyze Baker's USERRA § 4311 retaliation claim under the burden shifting framework set out in *NLRB v. Transportation Management Corp.*, 462 U.S. 393 (1983). *See Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). First, an employee must show his military service or protected action under the statute was a "motivating factor" in the adverse employment action. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002) (quoting 42 U.S.C. § 4311(c)(1)). An employee's military status need not be the "sole motivation" for the adverse decision; the military service need only be "a substantial or motivating factor." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (quoting *NLRB*, 462 U.S. at 400–01). If the employee makes this showing, the burden shifts to the employer who "may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Leisek*, 278 F.3d at 899.

Baker alleged USERRA retaliation claims based on the following: (1) after suffering an injury at work, Baker was initially assigned Temporary Alternative Work (TAW), but he was later denied that work, which resulted in diminished wages; and (2) after Baker was rehabilitated, he was twice not allowed to return to work for a total of two weeks, resulting in additional wage loss. We assume that Baker engaged in statutorily protected activity in filing his underlying class action suit against UPS, and that the wage losses were adverse employment actions under USERRA. But we agree with the district court that Baker has failed to meet his burden of showing that his USERRA protected activity was a "motivating factor" for UPS's adverse employment decisions.

Baker failed to present any direct evidence of retaliatory motivation. Baker's managers all testified that when Baker was removed from TAW, they were unaware of his class action lawsuit. At the time of the two-week denial of his return to work, Baker's manager Robert Fisher was aware of Baker's suit.

But notwithstanding Baker's conclusory testimony, it was not Fisher, but UPS's Health and Safety Department, that made the decision to remove Baker from TAW and to deny his return to work. *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (quoting *Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended*) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

insufficient to create a genuine issue of material fact."). And Baker has presented no evidence that Curtis Wentler, the Health and Safety manager responsible for these decisions, was aware of Baker's suit.

Even if there were a genuine dispute of material fact as to whether Baker's lawsuit was a "motivating factor," UPS has sufficiently shown that it "would have taken the same action without regard to [Baker's] protected status." *Leisek*, 278 F.3d at 899. UPS policy permitted TAW assignments only if the alternative work was both available and would not cause the employee to get hurt further. Baker admitted that he told a supervisor his TAW assignment made him "a little sore." UPS's Health and Safety Department then removed Baker from TAW because the work was worsening his injury.

Following completion of his physical rehabilitation, Baker sought to return to work on two occasions. He was first unable to return to work because his initial medical release note permitted him to work only eight hours per day for two weeks. It is UPS standard practice to permit an employee to return to work only if the medical release note does not restrict the number of hours the employee can work.

Baker then obtained a second release note removing the hours restriction, but this second release note was written by a provider who was not his original treatment provider. UPS policy requires employees to obtain a release note from

the provider who initially assessed their restrictions or, if they changed providers, to explain that there was such a change.

Once Baker provided evidence of the provider change, he was immediately permitted to return to work. There is no dispute that these were UPS's policies, that these policies were not applied discriminatorily, and that the policies applied to Baker's circumstances. This met UPS's burden, at summary judgment, to demonstrate that there is no genuine dispute that UPS would have taken the same action irrespective of Baker's filing of his lawsuit.

2. Baker's claims fare no better under a cat's paw theory of liability. "When the company official who makes the decision to take an adverse employment action is personally acting out of hostility to the employee's membership in or obligation to a uniformed service, a motivating factor obviously exists." *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). Cat's paw liability exists "when that [decision-making] official has no discriminatory animus but is influenced by previous company action that is the product of a like animus in someone else." *Id.* But if an employer takes an action "for reasons unrelated to the supervisor's original biased action," as proven by the employer, "then the employer will not be liable." *Id.* at 421.

For Baker's cat's paw theory to work, we must assume that Wentler made the adverse employment decisions. As discussed, Baker failed to present evidence

that his managers—the predicate decisionmakers—were biased against him for filing his suit. Even assuming Baker's managers were biased, there is no evidence that the information they gave Wentler was infected by that bias. Again, it is undisputed that he told a supervisor that his TAW assignment was making him "sore," that his first medical release note had work hour restrictions, and that his second release note was not from his original provider. There was therefore no genuine dispute of material fact as to whether Wentler was influenced by an allegedly biased employee. *See Acosta v. Brain*, 910 F.3d 502, 515 (9th Cir. 2018) (noting for a cat's paw theory of liability, the biased employee's "influence with the decisionmaker [must] be strong enough to actually [have] cause[d] the adverse employment action" (quoting *Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015) (alterations in original))).

3. The district court also properly granted summary judgment to UPS on Baker's WLAD claims. The analysis of the WLAD claim is virtually identical to the analysis of Baker's USERRA claim. *See Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1284–85 (W.D. Wash. 2020). Claims for adverse action under the WLAD, like USERRA, proceed under a burden shifting framework. *See Scrivener v. Clark Coll.*, 334 P.3d 541, 546 (Wash. 2014). First, the plaintiff must establish a prima facie case that "(1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link between

the employee's protected activity and the adverse employment action." *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018). Then the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Scrivener*, 334 P.3d at 546. If the employer meets this burden, the plaintiff must provide evidence that the employer's reason was pretextual. *Id*.

As discussed, Baker has not made a showing that his supervisors or Wentler had a retaliatory motivation in making the adverse employment decisions. And, as discussed, there is no genuine dispute of material fact that UPS would have made the same adverse decisions without regard to Baker's protected activity.

**AFFIRMED.**